Bonser v. Town of Nottingham          CV-96-343-M     06/20/97
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW HAMPSHIRE


Terry L. Bonser, Mary L. Parks Bonser,
and Cedar Waters Village Partnership

     v.                                        Civil No. 96-343-M

Town of Nottingham, et al.


                          **O R D E R**


     Litigation in state court involving these parties (and

others related to them) has consumed nearly two decades, leaving

a procedural history as complex as it is voluminous.  See, e.g.,

Town of Nottingham v. Cedar Waters, Inc., 118 N.H. 282 (1978);

Bonser v. Courtney, 124 N.H. 796 (1984); Town of Nottingham v.

Bonser, 131 N.H. 120 (1988); Knox Leasing v. Turner, 132 N.H. 68

(1989).  In the civil rights action[1] brought in this court

plaintiffs allege that defendants are violating their federal due

process rights by issuing and attempting to enforce a writ of

execution against their real property when no judgment has been

entered against them.[2]  Plaintiffs seek declaratory and

injunctive relief to prevent enforcement of the writ of execution

_____

     [1]  Plaintiffs' complaint also includes several state law
claims based on the same facts as their federal claims.

     [2]  The writ of execution was issued in a proceeding in
Rockingham County Superior Court captioned Town of Nottingham v.
Robert A. Bonser and bearing docket number E-438-81.

(and resulting alleged deprivation of their property without due process) as well as money damages from defendants who are not protected by immunity.

## Procedural Background

Following the Magistrate Judge's initial review of plaintiffs' complaint pursuant to LR 4.3, claims brought against the state judicial defendants by the pro se plaintiffs, Mary Parks Bonser and Terry Bonser, were dismissed. But the partnership's claims were not dismissed under the local rule since the partnership is properly represented. The judicial defendants then moved to dismiss the partnership's claims against them on grounds that the Eleventh Amendment and absolute judicial immunity barred the claim for money damages, and that the writ of execution was properly issued against the partnership. In the alternative, the judicial defendants argued that this court lacks jurisdiction to consider the partnership's claims, or, at least, should abstain from intervening in an ongoing state proceeding.

At the hearing on defendants' motion to dismiss, the New Hampshire Attorney General, on behalf of the judicial defendants, represented that a state court order in Town of Nottingham v. Robert A. Bonser and Cedar Waters Village, Inc., Docket No. E-438-81, titled "Final Order" and dated July 20, 1990, constituted

2

the <u>judgment</u> that obligated the plaintiff partnership to pay the amounts reflected in the writ of execution. That order, however, neither names the partnership as a defendant nor otherwise declares the partnership liable for any contempt fines levied against Robert Bonser and CWI. The Attorney General then argued that certain inferences should be drawn from documents filed by the Bonser defendants during their state appeal (as well as from other orders entered in the state proceedings) -- particularly that the state court intended the partnership to be included when it used the plural term "defendants" in its July 20 order. In addition, the Attorney General proposed an interpretation of relevant New Hampshire Supreme Court decisions as establishing that the partnership's current due process claims have already been heard, considered, and denied in state court, thus precluding further consideration of those same issues here.

The Attorney General did not demonstrate that any judgment had ever been entered against the partnership in the state proceedings, and the motion to dismiss was denied, but without prejudice. Given the confusing state court record, these proceedings were stayed for ninety days to allow plaintiffs to file a motion to reopen the proceedings in state court in order to obtain clarification as to what the state court did or did not

do with regard to entry of judgment (for contempt or otherwise) against the partnership.

Plaintiffs dutifully filed a motion in Rockingham County Superior Court in Town of Nottingham v. Robert Bonser, et al., docket number E-483-81, seeking a hearing "to clearly establish what order, attachment or law this court is using to support execution against the Cedar Waters Village Partnership, its individual partners or property in favor of [p]laintiff Rockingham County Superior Court." On April 9, 1997, the superior court, McHugh, J., denied plaintiffs' motion for a hearing "[f]or all of the reasons set forth in the [defendant town's] response to the motion for a hearing." The town's response, in essence, argued that the partnership and Mary Parks and Terry Bonser had already had sufficient opportunity to be heard and to present their due process arguments in state court. The town's response relied on the same type of inferential analysis previously presented to this court in the hearing on judicial defendants' motion to dismiss.

The superior court sua sponte issued a revised order on April 17, 1997, withdrawing its April 9 order. In its April 17 order, the state court determined that the motion for a hearing previously filed by the partnership in the state court proceeding would remain "in the 'pending' status" and that it would

4

reconsider whether a hearing was necessary after taking into consideration developments in the case in federal court, including the effect of the Attorney General filing the requested documents.

As requested,[3] certified copies of all state court documents that purport to establish the regularity and enforceability of the writ of execution issued against plaintiffs' property have been filed. Accordingly, preliminary review of the nature and merit of plaintiffs' federal claims, as well as this court's jurisdiction to consider them, is now possible.

## Review of the State Record

The challenged writ of execution was issued on May 6, 1996. The writ expressly states that it is in favor of the Rockingham County Superior Court, for satisfaction of a judgment recovered against Robert A. Bonser, Cedar Waters Village Inc., and Cedar Waters Village Partnership in the amount of $231,692.00. That judgment, the writ says, was entered on January 26, 1996. But, despite the writ's reference to a judgment entered on January 26, 1996, no such judgment has been produced, and the certified copy

---

[3] Given the convoluted history of this case in state court and plaintiffs' often imprecise pleadings, this court has attempted to evaluate and clarify plaintiffs' claims and the status of previous litigation at the outset, in order to avoid repetition of the protracted state court proceedings.

of the docket entries in <u>Town of Nottingham v. Robert Bonser</u>, docket number E-438-81, does not reflect entry of any judgment on that date, or at any other time in reasonable proximity before the first writ of execution was issued on January 29.[4]  Without addressing the express language of the writ of execution, defense counsel continue to argue that the combined effect of a series of state court proceedings, orders, and judgments necessarily demonstrate that <u>judgment</u> was in fact entered against the partnership, Mary Parks Bonser, and Terry Bonser for the amount stated in the May 6 writ of execution, and that, accordingly, their property may be taken to satisfy that <u>judgment</u>.[5]

The defense chronology[6] begins with the town's prejudgment attachment petition, filed on March 27, 1987, which sought to attach the property of Robert Bonser and CWI, to secure payment of attorneys' fees and penalties.  Before the court granted the attachment, Robert Bonser and CWI conveyed the real estate to Cedar Waters Village Partnership, which included Robert Bonser,

---

[4]  The clerk of court automatically enters all judgments in the docket.  N.H. Rev. Stat. Ann. § 524:1-c; <u>see also</u> Richard V. Wiebusch, 5 <u>New Hampshire Practice</u> § 1860.

[5]  CWI was dissolved in May of 1987 and Robert Bonser died in May of 1994.

[6]  Defense counsel have provided certified copies of thirty-six superior court documents, marked as Exhibit A.

Mary T. Bonser,[7] and Terry L. Bonser among the partners. CWI was then dissolved. The partnership moved to intervene in the suit to protect its interests in the property formerly owned by Robert Bonser and CWI. The town filed a motion to set aside that conveyance as fraudulent.

The town represents that on October 9, 1987, the state court separated the fraudulent conveyance dispute from the original case.[8] The partnership's motion to intervene was granted as to the fraudulent conveyance action, and individual partners were allowed to appear pro se to represent their partnership interests, but the motion was initially denied as to intervention in the original case against Robert Bonser and CWI. The attachment, which had been granted in favor of the town on June 1, 1987, was later vacated by the New Hampshire Supreme Court with direction to resubmit motions for attachment to the judge specifically assigned to the fraudulent conveyance action.

Although the procedural history becomes somewhat murky at this point, the parties apparently agree that the partnership's

_____

[7] The court notes that Mary T. Bonser and Mary Parks Bonser are not the same people.

[8] The portion of the state court record filed with this court reveals no state court order or docket entry to that effect. However, an order dated January 22, 1988, bearing docket number 87-E-657, appears to have been entered in the fraudulent conveyance action, confirming the maintenance of a separate case.

7

motion to intervene in the original case was later granted, in August 1989. As the record filed here does not seem to include a copy of that order, the court is not able to ascertain whether or not intervention by the partnership in the original case was limited to protection of the individual partners' partnership interests in property, as is asserted by the plaintiffs here. Defense counsel say that the partnership filed a motion to dismiss and to withdraw its intervenor status on July 3, 1990, but the referenced document in the record is actually a different motion to dismiss, which was filed by Robert Bonser and CWI in August 1987. The docket sheet reflects, however, that a motion to dismiss was filed by the partnership and Mary Parks Bonser on July 6, 1990. That pleading does not appear to be included in the record filed by the Attorney General.

In its order dated July 20, 1990, the state court denied the partnership's motion to dismiss stating, "[t]he partnership cannot claim party status for only those issues that are favorable to it," and noted that "substantial identity" existed between the partnership and CWI and that the fraudulent conveyance action remained unresolved. The state court also acknowledged in that order that no contempt judgment had been rendered against the partnership, but nevertheless allowed the town's attachment against partnership property, perhaps based on

8

the likelihood of a fraudulent conveyance judgment in the related action.  The state court awarded the town approximately $1.5 million in fines and attorneys' fees.  The town's attachment against the property of Robert Bonser, CWI, and the partnership, in the amount of $2 million, was recorded on July 23, 1990.

The state court's July 20, 1990, order was appealed to the New Hampshire Supreme Court.  In an order dated November 18, 1992, the supreme court reversed the superior court and remanded the case for a determination of whether the fines assessed were equitable.  The supreme court directed that the town should be awarded only its reasonable costs and attorneys' fees, and that whatever reasonable contempt fine was determined to be appropriate should be payable to the superior court.

A hearing was held in the superior court in May 1993 to assess appropriate costs, fees, and penalties.  In its order of June 14, 1993, as amended on July 20, 1993, the superior court determined that the town was entitled to an award of reasonable costs and attorneys' fees in the amount of $122,364.98.  The court also found that an appropriate contempt penalty had been assessed between 1982 and 1985 in the amount of $38,550.00.  In accordance with the New Hampshire Supreme Court's order of November 18, 1992, the court reduced the previously imposed daily penalty for the four year period from May 1986, when the court

9

imposed a fine for failure to comply with its order to remove the offending mobile homes, until May 1990, when the mobile homes were removed by the town, from $1000 to $100, resulting in an aggregate fine of $145,300.00. The total amount of assessed penalties to be paid to the court was $183,850.00. The New Hampshire Supreme Court subsequently summarily affirmed the superior court's ruling, and in November 1994, the United States Supreme Court denied Robert Bonser's petition for a writ of certiorari (Terry L. Bonser and Mary L. Parks were substituted as parties because Robert Bonser had died in May 1994).

The legal skirmishing in state court continued with motions for clarification and reconsideration and further appeals to the New Hampshire Supreme Court. The record filed here does not include state court orders relative to the later proceedings. The supreme court stayed enforcement of the initial writ of execution while the case was on appeal. The superior court docket indicates that the supreme court lifted the last stay of enforcement in October 1995, and that motions to reconsider were denied.

On January 29, 1996, the superior court issued a writ of execution in favor of Rockingham County Superior Court against Robert A Bonser, CWI, and the partnership, based upon a judgment allegedly recovered on January 26, 1996, in the total amount of

10

$231,692.00.  Terry Bonser and Mary Parks Bonser then filed a petition for original jurisdiction in the New Hampshire Supreme Court seeking to challenge the writ of execution.  The supreme court granted the petition, but only as to their challenge to the form of the writ of execution (the writ was unquestionably invalid on its face as it bore the test of "Superior Court Chief Justice Joseph A. DiClerico, Jr." -- Judge DiClerico had been Chief Judge of the federal district court for over three years).  The supreme court declared the writ defective and remanded the case for amendment.  The superior court then issued a second writ of execution dated May 6, 1996, which recited the same judgment, parties, and amount, but in a new form and, this time, at the order of Linda S. Dalianis, Senior Justice, as witness.

## Analysis

The town argues first that the partnership took the property in the conveyance from Robert Bonser and CWI with actual notice of the town's pending petition to attach and, therefore, by operation of state law, the town's interest in the property is superior to the partnership's interest.  The town contends that its interest is unaffected by intervening vacation of the attachment order, because its original petition remained pending and a subsequently granted attachment was perfected on July 23,

11

1990.  The town also argues that, because it is merely asserting a superior lien on the property, its claim does not require a fraudulent conveyance judgment and is not affected by statutes pertaining to partnerships.  The town, however, points to no state court judgment, order, or decision affirming its interpretation of the record and New Hampshire law.  The Attorney General and town concede that the state fraudulent conveyance action has not proceeded to judgment — that is, there is no state judicial decision setting aside the conveyance of the property to the partnership as fraudulent.  The state court record filed here is silent as to the current status of the fraudulent conveyance action, and neither the Attorney General nor the town has addressed the question.  In addition, the town has not explained how its attachment, even if entirely valid, relates to the current writ of execution, which expressly runs only in favor of Rockingham County Superior Court (the town is not mentioned in the writ).

Second, the town asserts that because the partnership intervened in the original case between the town and Robert Bonser and CWI, the partnership somehow became a "defendant," indistinguishable from Robert Bonser and CWI, and is now liable for penalties assessed against Robert Bonser and CWI, or for other sanctions supposedly imposed based on zoning violations

12

that occurred after the partnership acquired the property. The Attorney General, however, acknowledges that neither the partnership nor Terry Bonser nor Mary Parks Bonser were ever adjudged contemnors by any court of competent jurisdiction. Nevertheless, the Attorney General argues that the July 20, 1990, order in fact assessed costs, fees, and sanctions against <u>the partnership</u> as well as Robert Bonser and CWI, even though neither the partnership (nor its remaining individual partners) had ever been found to be in contempt or otherwise subject to sanctions.

By its terms, the July 20 order limits the partnership's liability to the contingency of the fraudulent conveyance action, which as noted above, was never resolved and probably remains an open case in state court. Certainly, the July 20 order does not expressly obligate the partnership to pay any amount awarded to the town. In fact, the court's clarified version of the order, issued on August 20, 1990, which orders a writ of execution in the amounts determined in the July 20 order, refers to "the defendant," which would seem to recognize that the partnership is not subject to the effect of the judgment.

The town and Attorney General also rely on the partnership's appeal of the superior court's July 20 order, filed in September 1990, to show that the order should be construed as a judgment against the partnership. One issue the partnership sought to

raise in its notice of appeal, but did not brief, was whether the trial court erred "in attaching, entering civil judgment and executing against the Appellants, Intervenors Cedar Waters Village Partnership, where there has never in this entire case been any allegation of contempt against the Partnership, it has not been found to have engaged in the receipt of any fraudulent conveyance from any other party to these proceedings." Defense counsel seem to argue that in failing to brief the issue the partnership purposefully waived its due process claim on appeal in order to avoid alerting the town to the procedural deficiencies in the state proceeding — deficiencies that could have been corrected by a final order in the fraudulent conveyance action. Perhaps, but defense counsel's interpretation seems far-fetched.

Finally, defense counsel argue that the superior court's order on June 14, 1993, amounted to a judgment against both the defendants (Robert Bonser and CWI) and the intervenors (the partnership and its partners) obligating all to pay the amounts awarded in favor of the town and the court. If that was the superior court's intent, it is not clear from the language of the order. Nowhere does the June 14, 1993, order state that it is a judgment against the intervenor partnership (or the individual partners) in addition to defendants Robert Bonser and CWI. (In

14

addition, plaintiffs quote from an internal note or memorandum allegedly found in a Rockingham County Superior Court file, pertaining to the state proceeding, that advised the deputy clerk of court to alert the town "to add the Estate of R. Bonser & Terry & Mary Bonser as party dfts!" Since Robert Bonser was alive until May 1994, plaintiffs say that the logical inference from the memorandum is that at least Terry and Mary Bonser were still not "defendants" as late as 1994.)

Notwithstanding the inferential chain defense counsel seek to construct, it is apparent, at least on the record submitted by counsel to this court, that no state court judgment has ever been entered against the plaintiffs here in favor of the Rockingham County Superior Court (or the town).

### Jurisdictional Issues

Defendants insist that their defense is primarily based on this court's lack of jurisdiction to consider plaintiffs' claims under the Rooker-Feldman doctrine, and the advisability of invoking familiar abstention doctrines to defer to the state courts. The Rooker-Feldman doctrine precludes a federal district court from reviewing a final judgment entered in a state court, and from considering claims that are inextricably intertwined with review of such proceedings. See Rooker v. Fidelity Trust

15

Co., 263 U.S. 413, 416 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); see also Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995). Federal claims are inextricably intertwined with state court proceedings (even if precisely the same claims were not raised previously in state litigation) if the party had an opportunity to raise those claims and if resolution of the claims in federal court would effectively provide a form of federal appellate review of the state court's decision. See Pennzoil Co. v. Texaco, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); Lancellotti v. Fay, 909 F.2d 15, 17 (1st Cir. 1990).

Once a state court issues a final judgment, a federal district court lacks jurisdiction to review the decision even if the state judgment is patently wrong or was entered following patently unconstitutional proceedings. Young v. Murphy, 90 F.3d 1225, 1231 (7th Cir. 1996). Thus, litigants may not seek to reverse a final state court judgment via civil rights litigation filed in federal district court. Ritter v. Ross, 992 F.2d 750, 754 (7th Cir. 1993).

If plaintiffs' claims, in essence, challenge a state court final judgment, the Rooker-Feldman doctrine would, of course, preclude this court's exercise of jurisdiction, even to review the constitutionality of that judgment or its underlying

16

proceedings. See Homola v. McNamara, 59 F.3d 647, 651 (7th Cir. 1995). This case is somewhat unique, however, in that apparently no state court judgment exists that obligates the partnership or Terry Bonser or Mary Parks Bonser to pay the amount set forth in the current writ of execution. And, no state court order or directive purports to authorize a taking of plaintiffs' property, beyond the mere inclusion of the partnership name in the title of a writ of execution.

Although the writ of execution is unquestionably a form of state court "order," it does not serve, for purposes of deciding jurisdiction, as a final state court judgment. Under New Hampshire's own law, a writ of execution "is a court order compelling the application of property to the satisfaction of a judgment." Richard V. Wiebusch, 5 New Hampshire Practice § 1892 (emphasis added). A judgment "is the judicial act by which the verdict or decree is confirmed and the case or proceeding is finally concluded." Id. at § 1851. A writ of execution, which is an order but not a judgment, is meaningful only to the extent it is issued upon a valid judgment, which judgment also must be described in substantially correct terms in the writ. Eaton v. Badger, 33 N.H. 228, 235 (1856); Avery v. Bowman, 40 N.H. 453, 455 (1860). Accordingly, review of the validity of a writ of execution, at least to the extent that the reviewing federal

17

court merely inquires as to the form of the writ and the existence of a valid underlying judgment, does not involve review of the state judgment on which it is based, and does not implicate the Rooker-Feldman jurisdictional limitation.  See, e.g., Homola, 59 F.3d at 651 (ex parte writs are subject to limited collateral attack); cf. Busch v. Torres, 905 F. Supp. 766, 771 (C.D. Cal. 1995) (Rooker-Feldman precludes federal court review of a judgment and its execution).  Issuance of a writ of execution does not necessarily establish the existence of a supporting judgment, although, obviously, issuance of a writ in the absence of judgment should be a rare error.

Even a cursory review of the state record filed in this court shows that no judgment was entered against the plaintiffs in favor of Rockingham County Superior Court and certainly not on January 26, 1996, as is recited in the current writ of execution. Defendants simply have not demonstrated that judgment in favor of the Rockingham Superior Court for the amount stated in the writ has ever been entered against these plaintiffs.  In addition, defense counsel seem to agree that the state court proceeding remains open (per Judge McHugh's sua sponte order dated April 17, 1997).  Therefore, based on the record presented here, the Rooker-Feldman doctrine does not preclude this court's exercise

18

of jurisdiction to consider plaintiffs' federal constitutional claims.

Although this court apparently does have jurisdiction over plaintiffs' federal claims based on the present record, nevertheless, because the state court has declared that plaintiffs' motion is in a "pending status," and, therefore, the state proceeding is "ongoing," federal abstention would appear to be the most appropriate course at this juncture.  A federal court, while unflaggingly obligated to exercise its statutorily conferred jurisdiction, may nevertheless abstain from providing discretionary relief when abstention principles so counsel. Quakenbush v. Allstate Ins. Co., 116 S. Ct. 1712, 1720 and 1728 (1996).  The federal policy of comity accords "'proper respect for state functions'" and "precludes any presumption that the state courts will not safeguard federal constitutional rights." Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (quoting Younger v. Harris, 401 U.S. 37, 44 (1971)). Under Younger abstention principles, a federal court will consider three factors:  (1) Are there ongoing state court proceedings?  (2) "[D]o the proceedings implicate important state interests[?]" and (3) "[I]s there an adequate opportunity in the state proceedings to raise constitutional challenges[?]"

19

The case of <u>Town of Nottingham v. Robert A. Bonser</u>, docket number E-438-81, is "ongoing." <u>See</u> <u>Revised Order on Defendants'</u> Motion for Hearing dated April 17, 1997 (explaining that plaintiffs' motion for a hearing in that court is in a "'pending' status"). That pending motion raises the issue of plaintiffs' liability for contempt fines and attorneys' fees and costs assessed in that state proceeding in favor of the town and Rockingham County Superior Court. Contempt proceedings (the asserted basis for the financial sanctions assessed) do implicate important state interests that do qualify as appropriate matters for federal abstention. <u>See</u> <u>Juidice v. Vail</u>, 430 U.S. 327, 336 (1977). Although the plaintiffs here have experienced more than a little difficulty in obtaining state court review of their federal constitutional claims, the problem stems as much from their presentation and articulation of the issues as the complex and voluminous state court record over the years. Thus, no negative presumption regarding the state courts' ability or willingness to protect plaintiffs' federal constitutional rights is warranted here — there is no doubt that New Hampshire's courts will fairly and fully consider plaintiffs' claims.[9]

_____

[9] Indeed plaintiffs' claims are new and unresolved — i.e. whether plaintiffs' property is, in fact, subject to seizure based upon a writ of execution that is not supported by an underlying judgment and, if so, whether such action violates federal constitutional guarantees. At a minimum, these claims

20

As part of the ongoing state proceeding, plaintiffs (intervenors in the state proceeding) can challenge the procedural basis for and the constitutional legality of the writ of execution against their property. See, e.g., Letter to "Mr. and Mrs. Bonser" from Howard J. Zibel, Clerk of the New Hampshire Supreme Court, June 4, 1996 (explaining that the latest writ of execution had not been reviewed by the supreme court and helpfully suggesting that the supreme court is likely not the proper forum in which to begin).

The May 6, 1996, writ of execution also seems to suffer from facial irregularities that can be corrected in the state court proceeding upon appropriate motion. For example, contrary to the writ's attestation, no judgment in the state proceeding (docket number E-438-81) was docketed on or near January 26, 1996, at least not according to the certified docket entries filed here. The last state court decision, included in the record here and issued prior to the writs of execution, is dated December 19, 1994, and it orders that a writ of execution shall issue in favor of the town "forthwith." The town is not mentioned in the current writ.

---

have not been raised or ruled on with regard to the May 6, 1996, writ of execution (and do not appear to have been considered, addressed, or decided previously).

Based on the record presented in this case, there is no state judgment relative to the <u>partnership</u> having been held in contempt, or providing that the partnership is obligated to pay assessments in favor of the town or the superior court. The "Order on Issues Remanded by Supreme Court," dated June 14, 1993, as amended on July 20, 1993, assessed attorneys' fees and costs in the town's favor ($122,364.98) as well as contempt fines in favor of the court ($183,850.00). However, only Rockingham County Superior Court is named in the writ of execution as a judgment creditor, and the amount of the judgment recorded is $231,692.00, which obviously exceeds the amount previously assessed in favor of the court.

There may well be other decisions, orders, or judgments by the state court, or particular circumstances that are not apparent on the record, as filed by defense counsel here, that would explain the facial irregularities in the state court proceedings. But, in any event, as the state court is far more familiar with the procedural complexities of this case, it is decidedly the better forum in which to address the federal due process issues raised by plaintiffs in each forum. If plaintiffs give the state courts a fair opportunity to understand just what their claims are, the state courts will, of course, fully and fairly consider them.

22

This court will abstain from considering plaintiffs' federal claims under <u>Younger</u> abstention principles, and will decline jurisdiction over the state law causes of action for the same reasons, <u>see</u> 28 U.S.C.A. § 1367(c)(4).[10]

Although claims for discretionary relief, such as declaratory and injunctive relief, may be remanded to state court, federal claims seeking money damages are different — they must remain in federal court. <u>Quakenbush</u>, 116 S. Ct. at 1728. Plaintiffs' complaint asserts claims for money damages against only defendants who are not protected by immunity, which would, of course, exclude the judicial defendants, at least as to the § 1983 claims. It remains unclear, however, whether plaintiffs seek money damages against the town under § 1983, as well as under their state law causes of action. Bearing in mind that plaintiffs' property has not yet been seized, that "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists," <u>Reid v. State of. N.H.</u>, 56 F.3d 332, 341 (1st Cir. 1995), and that a town cannot be held liable under § 1983 absent unconstitutional injury caused by a municipal

_____

[10] This court recognizes (and the plaintiffs should understand) that once the state court does enter <u>judgment</u> addressing the issues they have raised in their civil rights action here and which are pending in the state court proceeding, the <u>Rooker-Feldman</u> doctrine will operate to preclude further review by this court of that final state court judgment.

23

policy, custom, or practice, <u>Board of the County Comm'rs of Bryan County, Okla. v. Brown</u>, 117 S. Ct. 1382, 1388 (1997), it seems highly unlikely that plaintiffs intend to maintain a § 1983 claim against the town for damages, or that such a claim would be viable.  However, this court cannot make that determination sua sponte, without providing the parties with notice and an opportunity to be heard.  <u>See</u> <u>Wyatt v. City of Boston</u>, 35 F.3d 13, 14-15 (1st Cir. 1994).

Accordingly, all parties[11] are hereby provided an opportunity to respond to the court's intent (1) to abstain from considering all of plaintiffs' claims, (2) to remand all state law claims and the § 1983 claims for declaratory and injunctive relief, and (3) to dismiss all damages claims under § 1983.  The parties shall file their responses and supporting memoranda within twenty days of the date of this order.  Upon expiration of the twenty-day response period and after considering the filed responses, the court will issue an appropriate order.

---

[11]  Sheriff Wayne Vetter, who is a named defendant in this action, has moved to dismiss the claims against him.  As plaintiffs seek only injunctive relief as to Sheriff Vetter, the court's abstention decision would also apply to those claims.

24

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 20, 1997

cc:  Terry L. Bonser
     Mary L. Parks
     William A. Dewhurst, Esq.
     William G. Scott, Esq.
     Christopher P. Reid, Esq.
     Douglas N. Steere, Esq.
     Rockingham County Superior Court (courtesy copy)