Raymond HOMOLA, Plaintiff–Appellant,

v.

Paul McNAMARA, et al., Defendants–Appellees.

Nos. 94–1911, 94–2898, 95–1545 & 95–1573.

United States Court of Appeals, Seventh Circuit.

Submitted June 16, 1995.

Decided July 5, 1995.

Raymond Homola, Granite City, IL (submitted), pro se.

Randolph E. Schum, Edwardsville, IL, pro se.

Deborah L. Ahlstrand, Asst. Atty. Gen., Civil Appeals Div., Chicago, IL, for Daniel J. Stack.

Kevin F. Blaine, Madelyn J. Lamb, Coppinger, Carter, Schrempf & Blaine, Alton, IL, for Debra J. Meadows, Paul McNamara, City of Edwardsville, IL.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Litigation is society's way to resolve disputes. Courts invite parties to make their evidence and arguments known. Appellate courts correct errors. After the process has run its course, there should be peace between the former adversaries. Many persons do not see litigation this way, however. They adopt a never-say-die attitude. If the first case goes against them, then some chicanery must be to blame. Now if the courts are unable to separate truth from fiction—the premise of this attitude toward the results of litigation—one would suppose that the remedy lies in a political forum, or perhaps is an occasion for writing an exposé. Yet many litigants who refuse to accept judgments against them see their balm as—more litigation! If the judicial process is as inept as these litigants believe, then one wonders why they try, try again. Do they hope that their adversary will be more placid than they have been and will accept an adverse judgment? Yet why, if judgments are not final when adverse, should they be final when favorable? Or is the new suit just an effort to heap costs on one's nemesis, without regard to any prospect of obtaining a favorable judgment? Either way, the new suit is vexatious and intolerable, a ground of sanctions and, if the offense recurs, an order closing the courthouse doors. See *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995); *Sassower v. ABA*, 33 F.3d 733 (7th Cir.1994); *Sato v. Plunkett*, 154 F.R.D. 189 (N.D.Ill.1994).

Raymond Homola is such a litigant. Some years ago he applied for admission to the law school of Southern Illinois University at Carbondale. He was turned down and sued. He lost. *Homola v. Southern Illinois University*, 1993 WL 525849, 1993 U.S.App. LEXIS 34465 (7th Cir.). Homola promptly filed a fresh suit, making identical allegations, and lost again, this time on the ground of claim

preclusion (res judicata). *Homola v. Southern Illinois University*, 1995 WL 84612, 1995 U.S.App. LEXIS 4204 (7th Cir.). While suing the Law School, Homola was suing a number of defendants whom he accused of battery and other torts. He lost and did not appeal. Instead he filed another, identical suit, which he lost on identical grounds. *Homola v. Miles*, 1994 U.S. Dist. LEXIS 20309 (S.D.Ill.), affirmed, 1995 WL 309627, 1995 U.S.App. LEXIS 12442 (7th Cir.).

Homola has been a defendant as well as a plaintiff. Ross Construction Company sued Homola in a state court, which issued an order directing Homola to take down a fence that violated a restrictive covenant. In retaliation, Homola filed a federal suit against Randolph E. Schum, attorney for Ross Construction in the state case. Homola and Schum are citizens of Illinois, so diversity jurisdiction is unavailable; realizing this, Homola alleged that Schum was a state actor and asserted that he is liable under 42 U.S.C. § 1983. The district judge thought the complaint deficient because Schum is not a state actor, and because the complaint does not allege that the state court's procedures fell short of constitutional norms. He dismissed the complaint with prejudice. Homola's appeal is before us as No. 95–1573.

In another state case, the City of Edwardsville sought an injunction against construction work that Homola was conducting on the purported authority of an expired building permit. Homola made things difficult; he refused mail service and set his dog on a process server. Eventually service in hand was accomplished, but Homola did not deign to answer the complaint. The state court entered a default judgment and directed Homola to apply for a new permit and allow the City to conduct inspections. When Homola refused to comply with that order, he was directed to appear at a hearing to show cause why he should not be held in contempt of court. Scoffing at this directive, Homola did not attend. The judge held him in contempt and ordered his arrest. The Madison County Sheriff's Department apprehended Homola on October 20, 1993. After a night in jail, Homola agreed to comply with the City's laws and the judgment against him, and to permit an inspection on October 29, 1993. That did not stop him from filing his own papers in federal court, demanding that the City and Paul McNamara, its Director of Development Administration (who carried out the inspection), pay damages for their nerve in suing him, initiating the contempt proceedings that led to his arrest, and carrying out the inspection order. The district court dismissed the suit against the City on the ground that the arrest was a result of legal process and therefore did not violate the fourth amendment; McNamara prevailed because the judge interpreted the complaint as an official-capacity suit, which meant that McNamara could not be liable if the City had prevailed. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Homola's appeal from this judgment is No. 94–1911. Homola promptly filed a new § 1983 suit against Debra J. Meadows, the City Attorney for Edwardsville. Homola believes that Meadows knew or should have known that the City had a bad case. The district judge dismissed this suit on the ground of claim preclusion, because Meadows is in privity with the City (and anyway, the judge thought, had been sued in her official capacity, so the case was really against the City itself). Homola's appeal from this judgment is No. 94–2898. Unwilling to let a moment pass without litigation, Homola then sued Daniel J. Stack, the judge who ordered his arrest. The district judge dismissed this suit on the basis of judicial immunity, and Homola's appeal is No. 95–1545.

As this recitation shows, the district court gave four reasons for his decisions: no state action, no constitutional violation, res judicata, and immunity. Preclusion would be a sufficient answer in all of these cases—for all of the defendants are either parties to the state cases or in privity with the parties—if there were federal jurisdiction. Jurisdiction is an initial hurdle, however, and the district court's treatment is not entirely consistent. For example, if Schum is not a state actor, then there is no federal jurisdiction; yet the district court dismissed the complaint against him with prejudice, a decision on the merits that forecloses any claims Homola may have under state law. And if as the judge concluded McNamara and Meadows are just

proxies for the City of Edwardsville, then it was inappropriate to say even a word about the merits of Homola's claims—for he is seeking nothing less than collateral review of a state judgment entered in a civil case. Inferior federal judges lack jurisdiction to review the judgments of state courts, which are open to question, if at all, only in the Supreme Court of the United States under 28 U.S.C. § 1257.

■ A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction. This is the effect of the *Rooker–Feldman* doctrine, which is based on the principle that inferior federal courts cannot reexamine the decisions of state tribunals in civil litigation. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). See *GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993) (distinguishing between the law of preclusion and the domain of the *Rooker–Feldman* doctrine). See also *Alpern v. Lieb,* 38 F.3d 933 (7th Cir.1994); *Landers Seed Co. v. Champaign National Bank,* 15 F.3d 729, 732–33 (7th Cir.1994); *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993); *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589 (7th Cir.1992).

*Feldman* relied on the no-collateral-attack rule. *Rooker* itself put the proposition differently: a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court. For criminal cases the Court recently rearticulated *Rooker*'s theme, holding in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that a suit for damages whose success depends on establishing that the judgment of conviction is wrong cannot be maintained while the judgment stands.

Heck had sued two criminal prosecutors and an investigator with the state police. Instead of relying on doctrines of official immunity, the Court replied that the state court's judgment meant that Heck had not suffered a constitutional wrong. It did not matter that the defendants had not been parties to the state case. If the basis of the federal claim is inconsistent with the state judgment, the Court held, then the federal suit cannot be maintained against anyone. If the state judgment should be set aside on collateral review, then and only then would it be possible to state a claim against the persons responsible for the conviction.

*Heck*'s rationale, which tracks *Rooker*'s, does not invite the response: "Civil judgments are not subject to collateral attack and therefore I can sue immediately." If civil judgments are indeed invulnerable, then they *conclusively* establish the absence of a constitutional problem that could be actionable under § 1983. But of course they are not invulnerable. Post-judgment relief is available on many grounds, see Fed.R.Civ.P. 60(b), and most states (including Illinois) have similar systems. Relief in civil cases differs from that in criminal cases in two principal respects. First, the civil time limits are shorter (in federal litigation, for example, a claim of fraud on the court, Homola's theme, must be made within one year, Fed. R.Civ.P. 60(b)(3)). Second, the losing party cannot move to a new forum but must present his argument to the court that rendered the judgment. See *Harris Trust & Savings Bank v. Ellis,* 810 F.2d 700 (7th Cir.1987). Homola has tried to shift not only courts but also jurisdictions, asking a federal judge to award relief for wrongs committed in state court. Instead of saying that there was no constitutional flaw in the state proceedings, the district court should have refused to entertain the claims, sending Homola back where he belongs—the original courts.

Some cases suggest a possible objection to this conclusion. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), holds that police officers do not have absolute immunity for statements made in affidavits that lead to the issuance of search warrants, and that even the officers who execute a

search warrant are not immune if the warrant is obviously invalid. Along a similar line, *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), held that a conviction does not foreclose a claim based on a wrongful search or arrest, because a conviction may be valid even when the arrest is not. See also *Heck,* —— U.S. at —— n. 7, 114 S.Ct. at 2372–73 n. 7. Do these decisions mean that Homola is entitled to a federal decision on the validity of his arrest? We think not, for two reasons. First, Homola did not sue the arresting officers. He sued the City and its employees, activating the *Rooker–Feldman* doctrine. Second, *Malley* and *Allen* deal with *ex parte* writs issued by state courts. Orders issued without an opportunity for litigation are understood as open to limited collateral attack. The order to hale Homola into court in the contempt proceedings, by contrast, was issued after an opportunity to be heard. Homola spurned that opportunity—that is why he had to be dragged into court—but one who turns his back on the original tribunal does not help himself to the opportunity to litigate elsewhere.

■ Once a court issues an order, the collateral bar doctrine prevents the loser from migrating to another tribunal in search of a decision he likes better. E.g., *Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1955). Thus even a suit against the officers who arrested Homola would have failed. We held in *Scott v. O'Grady,* 975 F.2d 366 (7th Cir.1992), that sheriff's deputies who carry out an eviction order cannot be sued in federal court. Deputies implement the court's orders, and as it is impossible to attack the order itself it is impossible to wring damages from the deputies. Cf. *Ruehman v. Sheahan,* 34 F.3d 525 (7th Cir.1994). *Scott* was formally based on the eleventh amendment; we equated a suit against the deputies with a suit against the court, and therefore against the state. Take away the eleventh amendment and the result is the same; if a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the *Rooker–Feldman* doctrine is in play. McNamara, who entered Homola's property to conduct the court-ordered inspection on October 29,

1993, therefore is not amenable to suit under § 1983 in federal court, whether Homola has sued McNamara in his personal or his official capacity.

■ All three of Homola's suits against the attorneys and city employees should have been dismissed for want of jurisdiction. The suit against Judge Stack attempts to elide both this problem and the immunity defense by arguing that the judge acted in the absence of jurisdiction. Homola asserts that a notice of appeal he filed prevented the judge from ordering his arrest. As the district court pointed out, the state's appellate court dismissed the appeal before the arrest occurred. At all events, Homola misunderstands the role of "jurisdiction" in the law of judicial immunity. Notices of appeal affect the temporal allocation of functions among tiers of the judicial system. What matters for immunity, however, is subject-matter jurisdiction. See *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The judge must be acting as a judge, rather than as an ombudsman or administrative official. *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Judge Stack had subject-matter jurisdiction and played a judicial role. That is sufficient for immunity.

As we said at the outset, the judicial system cannot tolerate litigants who refuse to accept adverse decisions. Monetary sanctions are the usual recourse, with sterner stuff employed only if the lesson is not learned. Homola has abused the judicial process, and these four appeals are as weak as the underlying claims. It is time to do something beyond admonition. We give Homola 15 days to show cause why he should not be subject to monetary sanctions under Fed.R.App.P. 38. Meanwhile the judgments under review in Nos. 94–1911, 94–2898 and 95–1573 are vacated, and the cases are remanded with instructions to dismiss for want of jurisdiction. The judgment in No. 95–1545 is affirmed. Allocation of costs will abide the decision under Rule 38.