Yousef FAYYUMI and Raida Khamis, Plaintiffs,

v.

CITY OF HICKORY HILLS, a municipal corporation, Zeiler Management, Inc., an Illinois corporation, Susan Waddell and Marge Pantaleo, Defendants.

No. 98 C 1968.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 27, 1998.

Lewis W. Powell, III, William D. Moore, Jr., John Marshall Fair Housing Legal Clinic, Chicago, IL, for Yousef Fayumi and Raida Khamis, plaintiffs.

Vincent Cainkar, Louis F. Cainkar, Ltd., Burbank, IL, Michael G. Cainkar, Heather Renee Sloan, Louis F. Cainkar, Ltd, Chicago, IL, for City of Hickory Hills, Zeiler Management, Inc., Susan Waddell, Marge Pantaleo, defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs Yousef Fayyumi and Raida Khamis ("plaintiffs") filed this action against the defendants as the owners and/or managers of the plaintiffs' former residence, the Parkview Apartments ("Parkview"). The plaintiffs contend that the defendants interfered with the enjoyment of their property and evicted them in violation of 42 U.S.C. § 3617 and § 3604(a) and (b) of the Fair Housing Act (the "Act").[1]

Currently before the Court is the defendants' motion to dismiss. Defendants first argue that the Rooker–Feldman doctrine bars this Court's consideration of the plaintiffs' complaint, as the complaint improperly attacks a state court's determination that these defendants were entitled to possession of the plaintiffs' apartment. Next, defendants contend that because the plaintiffs could have litigated these claims during the state court forcible entry and detainer proceedings, the plaintiffs' claims are barred by the doctrine of res judicata. Finally, defendants assert that the statute of limitations on plaintiffs' claims has run, rendering this suit untimely. For the reasons stated herein, the defendants' motion to dismiss is partially granted and partially denied.

## RELEVANT FACTS

We begin by presenting the facts in a light most favorable to the plaintiffs. The plaintiffs and their two children resided at the Parkview Apartments, in Hickory Hills, Illinois. Like many of their former neighbors at Parkview, the plaintiffs are Arab–Americans. Comp., ¶¶ 2, 3, and 8. In early March 1994, the City of Hickory Hills ("City") purchased the Parkview. Comp. ¶ 4. The City retained Zeiler Management to manage the property. Defendant Susan Waddell, Zeiler's president, hired Marge Pantaleo as the site agent for Parkview. Compl ¶¶ 6, 7.

---

1. The plaintiffs have sought permission to amend their complaint, discarding their claim under 42 U.S.C. § 1982 and abandoning their request for punitive damages. Accordingly, we will not address the merit of these claims.

The plaintiffs allege that shortly after purchasing the Parkview, the City, through Waddell and Pantaleo, harassed the plaintiffs by interfering with the plaintiffs' enjoyment of their apartment unit. Compl. ¶ 9. The plaintiffs assert that the defendants systematically refused to provide basic maintenance to the buildings, grounds, and apartment units that were occupied by the plaintiffs and other Arab–Americans. *Id.* According to the plaintiffs, the defendants failed to provide janitorial service, frequently turned off the water without warning, refused to secure mailboxes, and refused to exterminate buildings infested with roaches and mice. *Id.* Moreover, the defendants allegedly tore up streets, thus preventing the tenants from driving up to the buildings, failed to collect garbage, thereby increasing rodent and roach infestation, and renovated only those apartments in which the tenants were not living. *Id.* The plaintiffs contend that this rendered their apartment uninhabitable and dangerous, in violation of the Act. *Id.* The plaintiffs attribute the defendants' conduct to racial animus. Comp. ¶ 10.

The plaintiffs similarly attribute their eviction to the defendants' discriminatory desire to rid the Parkview of its Arab–American tenants. The plaintiffs accuse the defendants of lulling them into believing they could submit their rent late without penalty, and then evicting the plaintiffs for failing to pay their rent in a timely fashion. Specifically, on July 7, 1994, the defendants served plaintiffs with a Landlord's Five Day Notice, informing plaintiffs that they owed $ 425 in back rent. Defs' Ex. A. The Notice explained that unless the plaintiffs tendered the rent within five days, they would be evicted. The plaintiffs failed to pay the back-rent by the July 12th deadline, but contacted Wadell on approximately July 18, 1994. Wadell allegedly informed the plaintiffs that they could take additional time to pay their rent, consistent with the defendants' practice of allowing such extensions.

Despite Wadell's assurances, on July 21, 1994, the City filed suit in the Circuit Court of Cook County seeking judgment against the current plaintiffs for possession and damages under the Illinois Forcible Entry and Detainer Statute. 735 ILCS 5/9–101 *et seq.* The plaintiffs contend that the defendants assured them that if the unpaid rent was tendered to the City's counsel at the court proceeding, the plaintiffs could remain in the apartment. However, counsel refused to accept this payment when the plaintiffs balked at paying his fees. The plaintiffs appeared in court, but did not raise any affirmative defenses or counterclaims. Comp. ¶¶ 14, 16. On August 4, 1994, the court entered judgment for possession and damages in favor of the City.

On October 28, 1994, the plaintiffs filed a complaint with the United States Department of Housing and Urban Development ("HUD"). Comp. ¶ 17. Mr. Khamis informed HUD in the complaint that "I believe that I was tricked into becoming evicted from my apartment because I was told that I could be late paying July's rent and two days after my last conversation with the manager I was summoned to eviction court and evicted. I believe I was discriminated against based on my national origin as many others in the building, all of Arabic origin, were either evicted or their leases not renewed." Defs' Rp., Ex. A. The plaintiffs withdrew their complaint from HUD on November 19, 1996, allegedly in order to file this action.

On March 31, 1998 plaintiffs filed the instant action with the Court. In addition to their allegations that their eviction was racially motivated, the plaintiffs' complaint set forth the allegations detailing the defendants' interference with the plaintiffs' right to live in a safe and inhabitable apartment. The plaintiffs contend that they have suffered economic loss, mental anguish, humiliation, and embarrassment and seek relief through a declaratory judgment, as well as compensatory and punitive damages. Comp. ¶¶ 19, 20, and 21.

## LEGAL STANDARDS

The defendants bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under 12(b)(1), the defendants challenge this Court's subject matter jurisdiction over the plaintiff's claim. Under Rule 12(b)(6), the defendants argue that the plaintiffs' prayer for relief seeking punitive dam-

ages should be dismissed for failure to state a claim upon which relief can be granted. The standard applied to each motion is similar. *Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253, 256 (N.D.Ill.1992). Because a motion to dismiss does not test the merits of the suit, all well-pleaded facts are taken as true, all reasonable inferences are drawn in favor of the plaintiff, and all ambiguities are resolved in the plaintiff's favor. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). With these standards in mind, we evaluate the defendants' motion to dismiss the plaintiffs' complaint.

## DISCUSSION

The essence of the defendants' motion is that the plaintiffs could have, indeed should have, raised their claims of discrimination as an affirmative defense before the state court in the forcible entry and detainer proceeding. Their failure to do so, defendants argue, bars our consideration of their claims pursuant to the Rooker–Feldman doctrine, res judicata, and the statute of limitations. Before addressing the defendants' arguments, we will briefly examine the Fair Housing Act.

### A. The Fair Housing Act

The Fair Housing Act prohibits racial discrimination of all kinds in housing. *Tyus v. Urban Search Management,* 102 F.3d 256, 260 (7th Cir.1996). The Act was designed to promote " 'open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the Act was designed to combat.' " *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1289 (7th Cir.1977) (quoting *Otero v. New York City Hous. Auth.,* 484 F.2d 1122, 1134 (2d Cir.1973)). To achieve this goal, courts apply the Act's terms liberally. *Snyder v. Barry Realty, Inc.,* 953 F.Supp. 217, 219 (N.D.Ill.1996). Turning to the Act itself, we note that section 3604 of the Act states that it is unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race....

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race....

42 U.S.C. § 3604. Similarly, section 3617 of the Act provides that:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of; or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted ... by the Act.

42 U.S.C. § 3617.

■ The Act authorizes claimants to bring actions alleging racial discrimination in housing in federal or state court. 42 U.S.C.A. § 3613(a)(1)(A). A court may award a successful civil claimant actual and punitive damages, a permanent or temporary injunction, a temporary restraining order, or other remedies the court deems appropriate. 42 U.S.C. § 3613(c)(1). Accordingly, a defendant in a forcible entry and detainer action may rely upon the Fair Housing Act to enjoin a violating landlord's attempt to evict him. *See, e.g., Valenti v. Salz,* 1995 WL 417547 (N.D.Ill. July 13, 1995); *see also Rosewood Corp. v. Fisher,* 46 Ill.2d 249, 263 N.E.2d 833 (1970) (ruling that allegations of discrimination and civil rights violations may be raised in defense of a forcible entry and detainer action.)

### B. The Rooker–Feldman Doctrine

With this background in mind, we turn to the Rooker–Feldman doctrine. The origin of the Rooker–Feldman doctrine can be traced to the two United States Supreme Court decisions bearing their names. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Rooker,* an unsuccessful state court plaintiff filed suit in federal district court, alleging that the state court decision rested upon an unconstitutional state statute. The Supreme Court affirmed the district court's ruling that

it had no jurisdiction over the matter, stating that the jurisdiction of federal district courts is strictly original. 263 U.S. at 416, 44 S.Ct. 149. The Court stated that once the state court has rendered a decision, even if incorrect, only the United States Supreme Court can reverse or modify that judgment. *Id.* at 415–16, 44 S.Ct. 149.

In *Feldman,* the plaintiffs filed a petition with the District of Columbia seeking a waiver of a bar admission rule. 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206. Disappointed with the ruling, the plaintiffs proceeded to federal district court, arguing that they should be admitted to the District of Columbia's bar and that the bar admission rule was unconstitutional. The Supreme Court ruled that: 1) to the extent the plaintiffs' action sought review of the District of Columbia's denial of their petitions to be admitted to the bar, the district court lacked subject matter jurisdiction; but 2) the district court had jurisdiction over that portion of the complaint involving a general attack on the constitutionality of the District of Columbia's bar admission rule. *Id.* at 476, 103 S.Ct. 1303. The Court noted that while federal courts lack jurisdiction to review state court's judicial decisions, the federal courts could review whether the District of Columbia's courts acted unconstitutionally in passing the bar admission rule because, in doing so, the District of Columbia court was performing a non-judicial function. *Id.*

■ Thus, the *Rooker–Feldman* doctrine rests upon the principle that as courts of original jurisdiction, federal courts are without the authority to sit as an appellate tribunal of the state judicial process. *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 21, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Brennan, J., concurring); *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996). Erroneous state-court decisions, with few statutorily-defined exceptions, are simply not violations of the Constitution cognizable in federal court. *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995). In a country with two separate and distinct judicial fora, the need for the Rooker–Feldman doctrine is clear—"this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus in order to make the dual system work and 'to prevent needless friction between state and federal court,' . . . it was necessary to work out lines of demarcation between the two systems." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (quoting *Oklahoma Packing Co. v. Gas Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 537 (1940) (citations omitted)). As such, a disappointed state court litigant can obtain federal review of issues actually raised and adjudicated in state courts only in the United States Supreme Court. 28 U.S.C. § 1257(3).

■ However, a plaintiff's failure to raise and adjudicate a federal issue in state court—while a bar to Supreme Court review under 28 U.S.C. § 1257—is no limitation on the scope of the Rooker–Feldman doctrine. *Feldman,* 460 U.S. at 483, n. 16, 103 S.Ct. 1303. The Supreme Court has explained that if the federal claims are *"inextricably intertwined"* with the state court's ruling, the district court has no subject matter over the issue, even if the plaintiff failed to raise the federal claim in the state court. *Id.* (emphasis added). Courts have repeatedly acknowledged that whether a federal claim is inextricably intertwined with a state judgment is often a difficult question. The crucial point is whether the district court is being asked to review the state court decision. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303.

For example, in *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993), the federal plaintiffs brought suit against the county that obtained the plaintiffs' land through foreclosure proceedings, alleging that the defendants violated the Constitution by not giving the plaintiffs proper notice of the foreclosure proceeding and by taking their property without just compensation. The Seventh Circuit found that these claims, while not raised before the state court, were *inextricably intertwined* with the state court judgment, because the plaintiffs would not have suffered any injury in the absence of the state court's ruling. *Id.* at 754. As such, Rooker–Feldman prevented the federal district court from sitting as an appellate tribunal reviewing the state court decision. *Id.*

In addition to the difficulty in resolving issues not presented to the state courts is the confusion regarding whether principles of res judicata or Rooker–Feldman apply. It is important to make an initial determination as to whether Rooker–Feldman applies, however, because "[w]here Rooker–Feldman applies, lower federal courts have no power to address other affirmative defenses, including res judicata." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996).[2]

We are not without guidance in determining whether a particular action may be barred by the Rooker–Feldman doctrine or the doctrine of res judicata. The Seventh Circuit set forth the "basic analytical methodology to be employed in determining the applicability of the Rooker–Feldman doctrine: whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702–03, 1998 WL 315942 (7th Cir. June 15, 1998). If the plaintiff's injury arises from the state court judgment—as it did in *Rooker*, where the plaintiff claimed that he was injured by the state court's wrongful application of an unconstitutional statute—then Rooker–Feldman bars the action. Conversely, if the source of the plaintiff's injury is distinct from and is not "inextricably intertwined" with the state court's ruling, Rooker–Feldman does not apply, though res judicata may bar the action. *Id.*

In *Homola v. McNamara*, the Seventh Circuit set forth the following rule of thumb in determining whether Rooker–Feldman or res judicata applies: if the federal plaintiff was the plaintiff in state court, res judicata should be considered, but if the federal plaintiff was the defendant in the state court, Rooker–Feldman should be considered. 59 F.3d 647, 650 (7th Cir.1995). The court explained that:

A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction.

*Id.* That this is not a bright line rule is demonstrated by the fact that both the *Rooker* and *Feldman* plaintiffs were also plaintiffs in the preceding state court action. *See Garry*, 82 F.3d at 1365. So while this rule is useful, the Court's inquiry remains focused upon whether the plaintiffs are seeking to undo a state court judgment. *Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir.1995).

The Seventh Circuit's application of these principles dispels any notion that the distinction between Rooker–Feldman and res judicata is clearly defined. The following three decisions are illustrative: *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726 (7th Cir. 1993) (Rooker–Feldman precluded district court jurisdiction ); *Garry v. Geils*, 82 F.3d 1362 (7th Cir.1996) (same); and *Centres, Inc. v. Brookfield*, 148 F.3d 699, 1998 WL 315942 (7th Cir.1998) (reversing district court's ruling that Rooker–Feldman applied, finding instead that res judicata barred the plaintiff's claim). We will discuss each case in turn.

In *GASH*, a junior mortgagee commenced a civil rights action against the village, which had been the winning bidder at a foreclosure sale. The state court confirmed the sale over the junior mortgagee's vehement objection. In federal court, the mortgagee repeated his state court allegation that the village had depressed the price of the foreclosed property by commencing a condemnation action in state court while the foreclosure action was pending, thus "taking" its property. The district court ruled that the issue was coterminous with principles of res judicata, which depends on the Full Faith and Credit Statute. *GASH*, 995 F.2d at 728 (citing 28

---

**2.** Moreover, while the application of res judicata is limited to situations where the federal plaintiff had a full and fair opportunity to pursue its claim in the underlying state action, Rooker– Feldman does not consider these limitations. *Id.* at 1367, n. 8. "Rooker–Feldman is entirely federal and requires no reference to principles of state law." *Id.*

U.S.C. § 1738). Because Illinois state courts would allow this litigation to proceed in their own forum, the district court reasoned, the federal courts could also address the constitutional claim. *Id.* (citing *Harris Trust & Savings Bank v. Ellis,* 810 F.2d 700, 704–06 (7th Cir.1987)).

The Seventh Circuit disagreed, finding that the district court lacked subject matter jurisdiction over the claim. Reversing, the court noted that for purposes of Rooker–Feldman it was irrelevant whether the state court would entertain the federal issue or rule it barred under res judicata. *Id.* at 728. Rather, the Seventh Circuit focused upon whether the plaintiff was "seeking to set aside a state judgment, or [presenting] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* The court then concluded that the plaintiff "did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment confirming the sale, rather than requiring the Village to condemn the building independently of the foreclosure as [the plaintiff] had demanded." *Id.* at 729. As such, the plaintiff was attacking the state court judgment itself, and the district court lacked subject matter jurisdiction over the claim.

Similarly, in *Garry v. Geils,* the Seventh Circuit concluded that the Rooker–Feldman doctrine prevented the plaintiffs from bringing a federal civil rights suit against village officials who had instituted a state court condemnation proceeding against the plaintiffs' property. In the state court proceeding, the officials secured a judgment condemning a substantial portion of the plaintiffs' property. In their federal suit, the plaintiffs charged that the decision to seek the condemnation was politically motivated, as the plaintiffs had supported the village officials' rivals in the prior election. The district court ruled that the plaintiff's claim was barred by res judicata, finding that the plaintiffs *could have* raised this claim in the state court proceedings.

In reversing, the Seventh Circuit agreed with the ultimate result but not the district court's analysis. The Seventh Circuit concluded that the plaintiffs' injury was not at the hands of the defendants, but stemmed from the judgment condemning their property. 82 F.3d at 1368. The court explained that "if the plaintiffs had been able to avoid the state court's condemnation of the property they would have had no federal action to bring. While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was *only complete* when the state court actually condemned the property." *Id.* (emphasis added). As such, the Rooker–Feldman doctrine precluded the district court from addressing the claim.

Moreover, the court rejected the plaintiffs' argument that Rooker–Feldman should not apply because they did not raise the constitutional argument in the state court proceedings. *Id.* at 1369. The Seventh Circuit noted that the state court had found that the power of eminent domain was being "properly exercised" in entering its ruling. As such, the plaintiffs' constitutional claim that the condemnation was politically motivated was "inextricably intertwined" with the condemnation action—that is, the defendants could not have properly exercised their power if the condemnation was sought in retaliation for past political alliances. *Id.* at 1369. Citing the Supreme Court's statement in *Feldman* that Rooker–Feldman is not limited by res judicata considerations, the Seventh Circuit stated that it was irrelevant that the plaintiffs failed to raise this issue with the state court. *Id.*

Similarly unavailing was the plaintiffs' contention that while Rooker–Feldman may bar their request for injunctive relief, their claim for damages was still viable. *Id.* at 1370. In advancing this argument, the plaintiffs were attempting to distinguish their federal court claims from the state court's judgment condemning their property. Noting that the plaintiffs had cited no authority for this proposition, the court found that Seventh Circuit precedent clearly established that Rooker–Feldman bars claims seeking equitable relief and money damages equally. *Id.* at 1370 (citing *Wright v. Tackett,* 39 F.3d 155, 156–57 (7th Cir.1994) (ruling that Rooker–Feldman barred plaintiff's federal claims that the de-

fendants had conspired to violate his civil rights by filing an unlawful foreclosure action against his property)).

In contrast to the *GASH* and *Garry* opinions is the Seventh Circuit's most recent pronouncement on the Rooker–Feldman doctrine, *Centres, Inc. v. Brookfield,* 148 F.3d 699, 1998 WL 315942 (7th Cir.1998). In *Centres,* the Town of Brookfield's Board of Supervisors denied the plaintiff's building permit application, despite the plaintiff's prolonged efforts at addressing the town's expansion concerns. The plaintiff first filed suit in state court, seeking review of the Board's denial. After the state court upheld the ruling as being supported by the law and the record, the plaintiff brought a § 1983 action alleging that the defendants' denial of the plaintiff's application was arbitrary and capricious, and violated the plaintiff's due process rights. In addition, the plaintiff brought a supplemental claim for inverse condemnation. The district court dismissed the action for lack of subject matter jurisdiction pursuant to Rooker–Feldman, finding that the plaintiff's complaint was an attack against the state court's ruling because the district court would have had to effectively void the state court's judgment in finding for the plaintiff.

The Seventh Circuit reversed. In doing so, the court distinguished between a "federal claim alleging injury caused by a state court judgment" and "a federal claim alleging a prior injury that a state court failed to remedy." 148 F.3d 699, 701–02, 1998 WL 315942. The court relied upon this distinction and the Seventh Circuit's rule of thumb[3] in differentiating between the application of res judicata and Rooker–Feldman, and found that Rooker–Feldman did not bar the plaintiff's action. The court determined that "Centres does not allege an injury from the state court judgment itself; rather, it challenges the actions of the defendants. Thus, Centres seeks to ignore the state court judgment rather than to have the federal court sit

as an appellate court and overrule the state court determination." *Id.* at 703.

In comparing the three opinions, we note that in each instance the Seventh Circuit looked to the source of the injury in determining whether Rooker–Feldman or res judicata applied. In *GASH* and *Garry,* neither of the defendants had the authority to inflict the injury—that is, to proceed with the foreclosure sale or condemn the plaintiffs' property—without the state court's ruling. Because the defendants lacked this power, the Seventh Circuit found that the plaintiffs' injuries were not complete until the state court entered its judgment. Therefore, the federal plaintiffs were actually seeking to reverse the injury inflicted by the state courts, not the defendants, and Rooker–Feldman applied.

This is in direct contrast to *Centres.* In *Centres,* the plaintiff's damages arose once the defendants denied the permit application. This injury was distinct from the state court's ruling, which merely determined that the defendants' conduct was neither arbitrary or capricious. Because the plaintiff sought to avoid rather than attack the state court judgment, Rooker–Feldman principles did not come in to play, but res judicata prevented the plaintiff from proceeding.

■ In applying these principles to the case at bar, we too look to the source of the plaintiffs' injuries. The plaintiffs claim that the defendants violated the Fair Housing Act in two ways: 1) by rendering their apartment dangerous and uninhabitable because of their race (the § 3617 claim); and 2) by lulling them into believing they could pay their rent late to justify their eviction (the § 3604 claim). As to their § 3617 claim, we find that the plaintiffs are not challenging the state court process or entry of possession as wrongful or unconstitutional. On the contrary, the § 3617 claim seeks damages for an injury wholly independent of the state court judgment—the defendants' denial of maintenance, service, and access to apartments occupied by Arab–Americans. This injury was inflicted at the hands of the defendants before, during, and after the state court pro-

---

**3.** As stated above, the rule of thumb is that if the federal plaintiff was the plaintiff in state court, he must overcome res judicata. Conversely, if the federal plaintiff was the defendant in state court, Rooker–Feldman may apply.

ceeding. Therefore, while res judicata may bar plaintiffs' § 3617 claim, Rooker–Feldman does not apply.

■ The plaintiffs' § 3604 claim presents a more challenging task. As it is undisputed that the plaintiffs failed to raise this issue before the state court, we must determine whether it is "inextricably intertwined" with the state court's determination that the defendants were entitled to possession of the apartment. In doing so we note that the defendants would not have been entitled to possession—as the state court determined—if the defendants brought the eviction action in violation of § 3604 of the Fair Housing Act. Accordingly, we find that the injury of which the plaintiffs complain is more analogous to the injury alleged in *GASH* and *Garry* than *Centres*. These plaintiffs suffered damage once the state court enabled the defendants to proceed, by allowing the defendants to gain possession of their apartment. While the plaintiffs allege that the defendants were motivated by racial animus in seeking to evict the plaintiffs, the injury was *only complete* when the state court issued its ruling. The plaintiffs would not have suffered any damages in the absence of the state court's judgment enabling the defendants to proceed with their alleged scheme to rid the Parkview of plaintiffs and other Arab–Americans. Unlike the *Centres* plaintiffs, Fayyumi's and Khamis' second discrimination charge fails to "present some independent claim, albeit one that denies a legal conclusion that a state court has

reached in a case to which he was a party." *GASH*, 995 F.2d at 728.

The plaintiffs' § 3604 claim asks this Court to set aside the state court's ruling in contravention of Rooker–Feldman. As the Seventh Circuit made clear in *Garry*, the fact that plaintiffs are seeking money damages along with their request for declaratory judgment does not save them from the application of the Rooker–Feldman doctrine. *Garry*, 82 F.3d at 1370 (citing *Landers Seed Co., Inc. v. Champaign Nat. Bank*, 15 F.3d 729 (7th Cir.1994) (Rooker–Feldman equally applied to claims seeking injunctive relief and damages)).

Finally, the plaintiffs' arguments that they were not required [4] to raise this claim at the forcible entry and detainer proceeding because Illinois has only permissive, not compulsory, counterclaims is of no moment. The United States Supreme Court and the Seventh Circuit have stated that "engaging in impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is "inextricably intertwined with the state court judgment."" *Garry*, 82 F.3d at 1369 (citing *Feldman*). We find we have no subject matter jurisdiction to review the plaintiffs' § 3604 claim because it is inextricably intertwined with the state court's judgment.[5]

## C. Res Judicata

■ The defendants assert that even if the Rooker–Feldman doctrine does not deprive

4. This is to be distinguished from a claim that plaintiffs were allowed, as opposed to required, to bring this claim before the state courts. In *Rosewood Corp. v. Fisher*, the Illinois Supreme Court ruled that allegations of discrimination and civil rights violations may be germane to and raised in a forcible entry and detainer proceedings. 46 Ill.2d 249, 263 N.E.2d 833 (1970).

5. Had we ruled that Rooker–Feldman did not bar plaintiffs' claim of discriminatory eviction, this § 3604 claim clearly would have been barred by res judicata. Illinois caselaw specifically states that a petitioner's motivation in bringing a forcible entry and detainer action is germane to the proceeding. *See Sawyier v. Young*, 198 Ill.App.3d 1047, 1054, 145 Ill.Dec. 141, 556 N.E.2d 759, 763–64 (1st Dist.1990). As such it could and should have been raised. While plaintiffs argue that in Illinois all counter-

claims are permissive, not compulsory (*see Miller v. Bank of Pecatonica*, 83 Ill.App.3d 424, 426–27, 38 Ill.Dec. 658, 403 N.E.2d 1262, 1264 (1980)), the same is not true of defenses. The plaintiffs' contention that defendants' decision to evict them was unlawfully discriminatory was not a counterclaim, but a defense. *Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 258, 263 N.E.2d 833, 839 (1970) (describing the defendants' assertion of civil rights claims in a forcible entry and detainer action as equitable defenses). In Illinois, the general rule is that a prior judgment is conclusive not only as to the defenses actually presented, but also as to those that might have been raised. *McLain v. West Suburban Hosp. Med. Center*, 208 Ill.App.3d 613, 153 Ill.Dec. 574, 567 N.E.2d 532 (Ill.App.1st Dist.1990); Illinois Law and Practice, Judgments § 347. Accordingly, plaintiffs' contention is without merit.

this Court of jurisdiction over the plaintiffs' remaining § 3617 claim, res judicata bars plaintiffs from obtaining relief. The Illinois Supreme Court has explained the concept of claim preclusion, stating that:

> Under the doctrine of res judicata, a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action.

*Torcasso v. Standard Outdoor Sales, Inc.,* 157 Ill.2d 484, 490, 193 Ill.Dec. 192, 626 N.E.2d 225, 228 (1993). Res judicata bars both claims that were brought and that could have been brought in a prior suit. *Yaw v. Beeghly,* 109 Ill.App.3d 627, 632, 65 Ill.Dec. 211, 440 N.E.2d 1066, 1069 (Ill.App.1st Dist. 1982).

Under 28 U.S.C. § 1738, a federal court must give state court judgments "the same full faith and credit ... as they have by law or usage in the courts of such State...." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *see also Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (ruling that state judgments must be given the same effect in federal court as they would in the rendering state court). While res judicata may be harsh in barring legitimate claims from being brought, it is necessary because it relieves the parties of the burden of multiple lawsuits, conserves judicial resources, and fosters reliance on judicial decisions by minimizing the possibility of inconsistent decisions. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, the question of whether the plaintiffs' claims are barred depends on the preclusive effect of the state judgment under Illinois law.

■ Three elements must exist for res judicata to bar a claim: (1) judgment on the merits in a prior action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits. *Pfeiffer v. William Wrigley Jr. Co.,* 139 Ill.App.3d 320, 322, 92 Ill.Dec. 332, 484 N.E.2d 1187, 1189 (Ill.App.1st Dist.1985); *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337 (7th Cir.1995).

Two tests have been used to decide if a claim has "identity" with a previously litigated matter. The first is the same evidence test, which asks whether the same evidence would support both claims. *Torcasso v. Standard Outdoor Sales, Inc.,* 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225, 228 (1993). If the same evidence would support both claims, the latter claim is barred by res judicata. *Torcasso,* 193 Ill.Dec. 192, 626 N.E.2d at 228. The second approach to res judicata used by Illinois courts is the transactional test, which considers whether both suits arise from the same transaction, incident, or factual situation. The transactional test provides that "the assertion of different kinds of theories of relief still constitute a single cause of action if a single group of operative facts give [sic] rise to the assertion of relief." *Rodgers v. St. Mary's Hosp.,* 149 Ill.2d 302, 312, 173 Ill.Dec. 642, 597 N.E.2d 616, 621 (1992) (quoting *Baird & Warner, Inc. v. Addison Indust. Park, Inc.,* 70 Ill. App.3d 59, 64, 26 Ill.Dec. 1, 387 N.E.2d 831 (1979)). Thus, the transactional approach focuses on the factual setting underlying the suit rather than the proof required. *Welch v. Johnson,* 907 F.2d 714, 720 (7th Cir.1990).

■ However, the Restatement (Second) of Judgments § 26(1)(c) also teaches that:

> The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one *which put no formal barriers in the way* of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law.

That is, if the plaintiff could not have brought his current suit in the previous action, the subsequent suit is not barred, even if the defendant could otherwise satisfy the three elements of res judicata. *Central States, Southeast and Southwest Areas Pension Fund v. Old Dutch Foods, Inc.,* 968 F.Supp. 1292 (N.D.Ill.1997) (finding that NLRB de-

termination regarding collective bargaining unit did not preclude district court's consideration of ERISA claim because the NLRB lacked jurisdiction to consider the ERISA claim); *Campbell v. Illinois Dept. of Corrections*, 907 F.Supp. 276 (N.D.Ill.1995) (finding that res judicata could not bar federal habeas petitioner's claim for damages where the Illinois habeas corpus statute did not permit prisoners to obtain damages.)

▮▮▮ In the instant case, formal barriers existed in the underlying proceeding that would have prevented these plaintiffs from raising a number of claims. Section 9–106 of the Code of Civil Procedure governs the admission of evidence in forcible entry and detainer proceedings. Section 9–106 provides that "[t]he defendant may * * * offer in evidence any matter in defense of the action. No matters not *germane* to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/9–106 (emphasis added). In determining whether an issue is germane to the distinctive purpose of the forcible entry and detainer action, the critical question is does the issue bear upon the question of whether the plaintiff is entitled to possession? *See Marine Park Assoc. v. Johnson*, 1 Ill.App.3d 464, 467, 274 N.E.2d 645, 647 (Ill. App.1st Dist.1971).[6]

A determination that an issue is germane begins with an examination of why the forcible entry and detainer action is being brought. *People ex rel. Dept. of Trans. v. Walliser*, 258 Ill.App.3d 782, 789, 196 Ill.Dec. 345, 629 N.E.2d 1189, 1195 (Ill.App.3rd Dist. 1994). For example, in *Walliser*, the Illinois Department of Transportation ("IDOT") brought a forcible entry and detainer action

against the former owner of a home that was being demolished to make way for state roads. The former homeowner sold his property to IDOT, remained in the home as a tenant for almost one year, but failed to make his rent payments. When the former homeowner tried to argue that he was entitled to instruct IDOT to deduct his rent payments from any additional relocation benefits to which he claimed he was entitled, the trial court excluded the defense on the grounds that it was not germane.

The appellate court reversed, stating that "[w]here a forcible entry and detainer action is brought for nonpayment of rent, the question of whether rent is due and owing is the crucial issue." *Walliser*, 258 Ill.App.3d at 789, 196 Ill.Dec. 345, 629 N.E.2d at 1195 (citing *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 359, 280 N.E.2d 208 (1972)). Accordingly the issue of whether IDOT was required to deduct the former homeowner's possible relocation benefits went directly to the question of whether rent was outstanding, and, therefore, whether IDOT was entitled to possession of the property. *Id.*

Applying this rationale to the instant case, we note that to the extent that plaintiffs' surviving claim is seeking damages independent of their eviction, it is not barred by res judicata.[7] These defendants filed the underlying action for non-payment of rent. The plaintiffs do not allege that they in fact paid the rent, or that they withheld rent in protest of the defendants' actions. Rather, their § 3617 claim centers around the defendants' denial of service, maintenance, and access to the plaintiffs' apartment because the plaintiffs were Arab–Americans. Because the plaintiffs do not contend that they refused to

---

6. Claims that are germane to the issue of possession generally fall into the following categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; or (4) claims questioning the plaintiff's motivation for bringing the action. *Sawyier*, 198 Ill.App.3d at 1054, 145 Ill.Dec. 141, 556 N.E.2d at 763–64. (1990).

7. To the extent that Fayyumi's and Khamis' surviving § 3617 discrimination claim attempts to establish the defendants' discriminatory motiva-

tion for bringing the eviction action, it is germane to the issue of possession. Under either the same evidence or the transactional approaches, the plaintiffs' claim is barred by res judicata. The same evidence that the plaintiffs would have needed if they had brought the current claim as a defense in the prior proceeding is used here. Furthermore, the same group of facts that underlie the defense the current plaintiffs should have used in the prior proceeding are at issue in the current case. Thus, there is identity between this causes of action and the permissible defense and it is barred by res judicata.

pay rent because the defendants rendered their property hazardous and uninhabitable, these allegations were not germane to the issue of back rent and, therefore, possession. Phrased differently, the fact that the defendants may have discriminated against the plaintiffs in the past was simply not germane to the fact that the plaintiffs failed to pay their rent in a timely manner, failed to comply with the Landlord's Five Day Notice, and that defendants were, therefore, entitled to possession. Because formal barriers existed that prevented the plaintiffs from raising this claim, res judicata does not bar our consideration of it in federal court.

### D. Statute of Limitations

 This is not the end of our inquiry, however, as the defendants also argue that the statute of limitations has run, barring the plaintiffs' suit. The statute of limitations for claims under the Act is two years "after the occurrence or the termination of an alleged discriminatory housing practice...which ever occurs last." 42 U.S.C. § 3613(a)(1)(A). The plaintiffs filed this suit on March 31, 1998. As such, the plaintiffs could recover only for discriminatory conduct occurring on or after March 31, 1996–over one and one-half years since the plaintiffs were evicted from the Parkview.

However, the limitations period is tolled during the time an administrative proceeding is pending under the Act. 42 U.S.C. § 3613(a)(1)(B). The plaintiffs allege that they filed a complaint with HUD on October 28, 1994, and withdrew the claim over two years later on November 18, 1996. Pursuant to this tolling provision, the time frame for the plaintiffs to bring their claims of discrimination is extended by over two years, rendering all of the plaintiffs' allegations timely.

The defendants counter that the only allegations raised in the plaintiffs' HUD complaint concerned whether their eviction was discriminatory, attaching a copy of plaintiffs' initial HUD petition. As such, defendants argue, the tolling provision should not apply to the plaintiffs' claim that the defendants violated the Fair Housing Act by rendering their apartment uninhabitable and dangerous. Defendants cite no authority in support of this proposition. In addition, no evidence has been submitted concerning whether additional allegations were ever presented to HUD, and no argument has been made concerning whether the plaintiffs' remaining claim is reasonably related to the HUD allegations. Accordingly, we find it would be inappropriate to grant or deny the defendants' motion to dismiss on this basis.

### CONCLUSION

The plaintiffs allege that the defendants rendered their apartment dangerous and uninhabitable, and evicted them because they were Arab–Americans. However, the plaintiffs failed to bring the issue of the defendants' improper motivation before the state court in the forcible entry and detainer proceeding. Because the state court determined that the defendants were entitled to possession, the plaintiffs were required to raise their § 3604 claim that the defendants were motivated by racial discrimination in the state courts and, ultimately, to the United States Supreme Court. Pursuant to the Rooker–Feldman doctrine, we therefore lack the subject matter jurisdiction to entertain plaintiffs' § 3604 claim.

However, the plaintiffs' claim concerning the defendants' conduct in failing to service and maintain their apartment because of their race assert an injury independent of the eviction proceedings. This issue was neither implicitly ruled upon by the state court, nor germane to the issue of possession. As such, we deny the defendants' motion to dismiss this § 3617 claim on the basis of Rooker–Feldman or res judicata. Finally, we find that the defendants' statute of limitations argument cannot be properly resolved on this motion to dismiss, but find instead that the issue should be resolved upon a motion for summary judgment.

In conclusion, the defendants' motion to dismiss is partially granted and partially denied. It is granted as it pertains to the plaintiffs' claims challenging the defendants' motivation in bringing the eviction action (the § 3604 claim). The defendants' motion is denied as to the plaintiffs' claim alleging that the defendants rendered their apartment dangerous and uninhabitable (the § 3617

claim). We also grant the plaintiffs' request to strike their § 1982 claim and their request for punitive damages. Plaintiffs are given leave to file an amended complaint consistent with this opinion on or before September 30, 1998.