**Daniel LeCLAIR**

v.

**COMMERCIAL UNION INSURANCE CO.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 17, 1996.

Decided July 15, 1996.

Stephen Kottler, Hardy Wolf & Downing, P.A., Lewiston, for Plaintiff.

Anne H. Cressey, Wendell Large, Richardson, Whitman, Large & Badger, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Daniel LeClair appeals from the judgment entered in the Superior Court (Androscoggin County, *Atwood, J.*) following a jury verdict in favor of his insurer, Commercial Union Insurance Company, on his complaint seeking damages pursuant to the uninsured/underinsured motorist provisions of the policy. LeClair contends that the trial court erred by (1) allowing Commercial Union to impeach his testimony using statements from a brochure drafted in connection with an unrelated accident; (2) permitting Michael Crowley to testify that he smelled alcohol when he approached LeClair's automobile immediately following the accident; and (3) excluding evidence purportedly establishing a routine of the Auburn Police Department. Finding no error in the record, we affirm the judgment.

The record reflects the following: On December 27, 1990, while LeClair was operating his vehicle on Center Street in Auburn and attempting to make a left-hand turn onto the roadway over the Memorial Bridge, it was struck from behind by a vehicle driven by Crowley. LeClair claimed an injury to his neck and shoulder area as a result of the accident. On March 30, 1991, LeClair was involved in a second automobile accident, resulting in a claimed injury to his back and some portion of his neck. LeClair filed the present complaint against Commercial Union alleging that Crowley was an uninsured or underinsured motorist and that, as LeClair's insurer, Commercial Union was liable for the injuries he suffered as a result of the December accident.

At the trial of the December accident, LeClair testified on direct examination, *inter alia*, that his neck and back injuries prevent him from bow hunting, swimming, bowling, dancing and golfing and that it is the neck injury resulting from the December accident, rather than the back injury resulting from the March accident, that has the greatest effect on his ability to be active in these ways. Over the objection of LeClair, on its cross-examination of him, Commercial Union referred to a document prepared on LeClair's behalf that was transmitted to the alleged tortfeasor in the March accident. LeClair admitted that he was aware of the contents of the document in which it was claimed that (1) he lost "only a couple of days work as a result of the December accident"; (2) he was unable to play golf, hunt or enjoy work as a result of the March accident; and (3) prior to the March accident, he was a "healthy, active man who loved being outdoors and derived much pleasure from doing physical things."

LeClair also testified that he did not consume any alcohol at any time on the day of and prior to the accident. Crowley testified that, immediately following the accident, he "went up to the car to see if [LeClair] was all right and I smelled alcohol in the car ... [and LeClair] was incoherent at the time." Crowley further stated that, while still at the scene, he told a police officer, whom he could not identify, that he smelled alcohol on LeClair's breath, but the officer did nothing about it. Without the presence of the jury, LeClair argued that Stephen Burns, an officer in the Auburn Police Department who responded to the scene of the accident, would testify that, although he did not have any recollection of the December accident, it was his habit to investigate any allegation of alco-

hol use, and the absence in the accident report of reference to his having performed such an investigation tended to cast doubt on the veracity of Crowley's testimony.

Following Commercial Union's objection to the proffered testimony, a *voir dire* was conducted in which Burns testified, *inter alia,* that he had no recollection of the December accident; that given the time of day and the location of the accident it was likely that at least one other officer assisted him at the scene; and, although he would always investigate an allegation that a driver involved in an accident smelled of alcohol, he could not speak for all the other officers within the department. The court excluded the proffered testimony pursuant to M.R.Evid. 406,[1] on the ground that the evidence disclosed it was likely that other officers of the Auburn Police Department were at the scene of the December accident and that Burns could not speak for the habit of the other officers. The jury found that Crowley was not negligent and returned a verdict in favor of Commercial Union. From the judgment entered denying his motion for a new trial, M.R.Civ.P. 59,[2] LeClair appeals.

■ LeClair first contends that, because the brochure prepared for the March accident was for the purpose of fostering settlement of that case, the trial court erred by permitting Commercial Union to use the statements contained therein to impeach his testimony at the present trial. We disagree. The trial court's disposition of a motion for a new trial will be upheld unless shown to be a "clear and manifest abuse of discretion." *McCain Foods, Inc. v. Gervais,* 657 A.2d 782, 783 (Me.1995) (citing *C.N. Brown Co. v. Gillen,* 569 A.2d 1206, 1209 (Me.1990)).

■ The admission of evidence of efforts to compromise is addressed by M.R.Evid. 408 that provides in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations or in mediation is also not admissible on any substantive issue in dispute between the parties.

We must first determine whether the statements at issue may be characterized as an offer to compromise, and therefore subject to the prohibitions within the first sentence of the rule, or as statements made in compromise negotiations, and therefore subject to the second sentence of the rule. We conclude that the statements as to LeClair's present incapacity due to the March accident were not offers to compromise but, rather, were statements made by LeClair in a compromise negotiation with the alleged tortfeasor involved in the March accident. Although the statements may be characterized as the type of statements generally within the prohibition of the rule, the rule prohibits the admission of such evidence only on "substantive issue[s] in dispute *between the parties.*" (Emphasis added). Because Commercial Union was not a party to the March accident, the statements made in compromise negotiation of that claim are not subject to the prohibition of Rule 408. *See generally Guy Gannett Pub. Co. v. University of Maine,* 555 A.2d 470, 472–73 (Me.1989) (Rule 408 bars admission of "settlement agreements only on substantive issues in dispute

---

1. M.R.Evid. 406 provides:

    (a) **Admissibility.** Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

    (b) **Method of Proof.** Habit or routine practice may be proved by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

2. M.R.Civ.P. 59 provides in pertinent part:

    The justice or judge before whom an action has been tried may on motion grant a new trial to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted in actions at law or in suits in equity in the courts of this state.

between the parties to the agreement." The rule's policy objective of encouraging out-of-court disposition of disputes between parties is not threatened when settlement evidence is admitted at trial and one of the parties to the agreement is not a party to the present action.)

 LeClair next contends that, because the testimony of Crowley that he smelled of alcohol immediately following the accident was irrelevant, M.R.Evid. 401–402,[3] and unduly prejudicial, M.R.Evid. 403,[4] the trial court erred by admitting the testimony in evidence over his objection. We disagree. Evidence that LeClair smelled of alcohol, in the context of a motor vehicle accident, is relevant to the issue of LeClair's potential comparative fault for the accident. *See, e.g., Poirier v. Hayes,* 466 A.2d 1261, 1263 n. 1 (Me.1983) (in negligence action brought by plaintiff who was struck by defendant's vehicle, evidence that plaintiff, *inter alia,* was "quite intoxicated" at the time of the accident "would permit a finding of contributory negligence on the part of plaintiff"). The trial court did not abuse its discretion by determining that the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice." M.R.Evid. 403.

 Nor do we find merit in LeClair's final contention that the trial court erred by excluding the testimony of Burns. M.R.Evid. 406 provides in pertinent part that "[e]vidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." We review the trial court's decision to exclude such evidence for an abuse of discretion. *State v. Libby,* 546 A.2d 444, 449 (Me.1988). Here, the court properly determined that the proffered evidence was insufficient to establish that the routine practice of the Auburn Police Depart-

ment was to investigate all reports of the odor of alcohol at accident scenes. *Cf. State v. Van Sickle,* 434 A.2d 31, 36–37 (Me.1981) (although officer could not remember doing so, evidence of officer's habit of marking and securing drugs immediately after sale is admissible when only that officer was involved in the disputed transaction); *Union Bank v. Stone,* 50 Me. 595, 596 (1862) (when notary public's records contained entry of notice to defendant and notary did not make such entries until the only person responsible for delivering notices returned from deliveries, evidence admissible on issue of notice to defendant).

The entry is:

Judgment affirmed.

All concurring.

---

3. M.R.Evid. 401 and 402 provide in pertinent part:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

All relevant evidence is admissible.... Evidence which is not relevant is not admissible.

4. M.R.Evid. 403 provides in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....