UNITED STATES of America, Plaintiff,

v.

Ronald W. SKEDDLE, et al., Defendants.

No. 3:95CR736.

United States District Court,
N.D. Ohio,
Western Division.

July 10, 1997.

Jon D. Richardson, Sr., Kaplan, Richardson, Rost & Helmick, William M. Connelly, Connelly, Soutar & Jackson, Toledo, OH, Peter R. Ginsberg, Gold & Wachtel, Robert Gold, Michael Sommer, McDermott, Will & Emery, New York City, NY, for Defendants.

Ronald W. Skeddle, Perrysburg, OH, pro se.

Robert William Kern, Office of U.S. Attorney, Cleveland, OH, Thomas A. Karol, Office of U.S. Attorney, Toledo, OH, for Plaintiff.

**Order**

CARR, District Judge.

This is a criminal case in which the defendants are charged with conspiracy to commit and committing mail and wire fraud, money laundering, and tax evasion. The superseding indictment (Doc. 232) alleges that three of the defendants, Skeddle, Costin, and Bryant, who formerly were President and Executive Vice Presidents, respectively, of Libbey–Owens–Ford Company (LOF), engaged in self-dealing whereby they, with the assistance of the other defendants, secretly acquired several million dollars in money and property belonging to LOF.

Pending is a motion by defendants to exclude and suppress certain statements purportedly made by Skeddle, Costin, and Bryant to LOF and the Fairfax Group, Ltd., an investigation firm hired by LOF to explore allegations of wrongdoing. (Doc. 517). The government has filed an opposition to the motion, (Doc. 536), to which defendants have replied. (Doc. 552). For the following reasons, defendants' motion shall be granted.

Just prior to May 10, 1993, LOF's counsel retained Fairfax to conduct an investigation of alleged wrongdoing by defendants Skeddle, Costin, and Bryant and their indicted coconspirators. In addition to corporate records, financial audits, affidavits, letters, court filings, photographs, etc., the files compiled by Fairfax contain notes, summaries, and memoranda arising out of interviews conducted on at least two occasions with Skeddle, Costin, and Bryant.

The first interview allegedly took place prior to September 21, 1993, and the second occurred on September 29, 1993.[1] The written summaries and memoranda of these interviews were produced to the government, which ultimately filed the instant indictment. As explained by LOF's counsel, the interviews served as a "step in our efforts to negotiate settlement between" LOF and Skeddle, Costin, and Bryant in a related civil case. (Doc. 517, Exh. 5 at 1). Defendants now seek to exclude these statements and any summaries, notes, or memoranda about the statements—which the government transmitted to defendants on June 6, 1996— from evidence in the upcoming criminal trial.

One of the grounds on which defendants seek to exclude the interview summaries from evidence is Fed.R.Evid. 408,[2] which states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempt-

---

1. Based on the parties' briefs, it is not apparent who conducted the first interview and when or where it took place. The second interview, on September 29, 1993, was conducted by LOF counsel David Alexander and Fairfax investigator William Larkin in the law offices of Connelly, Soutar & Jackson, who represented Skeddle, Costin, and Bryant at the time. William Larkin prepared memoranda of the interviews.

2. Defendants also seek to exclude the summaries of the interviews under the Forth and Fifth Amendments, as well as under a written contract wherein LOF agreed not to use the interviewees' statements for evidentiary purposes. Because I find defendants' arguments under Fed.R.Evid. 408 to be well taken, it is unnecessary to reach a conclusion regarding the constitutional and contractual issues.

ing to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require that exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added).

■ According to defendants, the purported statements to LOF and Fairfax "were made in an effort to facilitate settlement among the parties during a period in which LOF and defendants were actively engaged in settlement negotiations." (Doc. 517 at 6). Defendants contend that had they known that LOF or Fairfax would supply government investigators with summaries of the interviews, Skeddle, Costin, and Bryant "never would have consented to interviews with LOF or Fairfax." (*Id.* at 5). Therefore, according to defendants, such statements are inadmissible at trial pursuant to Rule 408. I find this argument to be well taken.

The clear language of Rule 408 renders "statements made in compromise negotiations" inadmissible. The government does not dispute that the statements by Skeddle, Costin, and Bryant to the LOF and Fairfax investigators were made during "compromise negotiations." A straightforward application of the Federal Rules of Evidence generally, and Rule 408 specifically, leads me to the conclusion that any statements, memoranda or summary of such statements shall be excluded.

■ The government argues that Rule 408 does not apply in criminal proceedings. I disagree: Rule 1101(b) explicitly states that the rules of evidence "apply generally" to

criminal cases and criminal proceedings. Nothing in Rule 408 limits its application to civil litigation that was preceded by or included settlement negotiations. Looking only at the text of Rule 408 in the context required by Rule 1101(b) leads to the conclusion that exclusion of defendants' statements is required.

The exclusion of the statements in question is not only required by a straightforward application of the rule; that result is supported by the case law of this Circuit. In *Ecklund v. United States*, 159 F.2d 81, 84 (6th Cir.1947), the Sixth Circuit held that the trial court erred when it admitted evidence of a civil-liability settlement in a criminal case.[3] The court pointed out that "[i]t has long been recognized that evidence of an effort to compromise is inadmissible in a civil case." *Id.* The Sixth Circuit, moreover, is not alone in holding that Rule 408 applies in a criminal context. *See United States v. Hays*, 872 F.2d 582, 588 (5th Cir.1989) (introducing evidence of a settlement agreement to assist the jury "in its understanding of the breadth of the conspiracy" is at odds with Rule 408); *United States v. Meadows*, 598 F.2d 984, 989 (5th Cir.1979) ("we assume the applicability of Rule 408 to govern the admission of related civil settlement negotiations in a criminal trial").

The government argues to the contrary, citing cases from the Second and Seventh Circuits for the proposition that "[d]efendants' statements, which were given in a civil proceeding to a private party, are admissible in a criminal proceeding." (Doc. 536 at 6). These cases, however, are distinguishable from the situation at bar.

The government first cites *Manko v. United States*, 87 F.3d 50, 54 (2d Cir.1996), stating that the policy underlying Rule 408 "does not apply in criminal prosecutions." This may be true: however, just because the *policy* of encouraging settlements may be irrelevant in a criminal prosecution does not mean that settlement statements derived from a

---

**3.** Although direct evidence of a settlement may be more prejudicial than evidence of statements made during unsuccessful settlement negotiations, Rule 408 and the case law make no distinction between evidence of a settlement and evidence of statements made during settlement negotiations.

civil context suddenly lose the protection afforded by Rule 408 when the forum changes to a criminal context. *Manko* also involved settlement discussions with the IRS, a governmental agency, not a private firm hired by a private corporation to investigate matters pertaining to contemplated civil litigation.

Next, the government cites *United States v. Prewitt*, 34 F.3d 436 (7th Cir.1994) and *United States v. Baker*, 926 F.2d 179 (2d Cir.1991), in support of its position that the statements in question are admissible without restriction. In both these cases, the statements in question were made to government investigators (the Securities Division of Indiana's Secretary of State's Office in *Prewitt* and the FBI in *Baker*) during settlement discussions. As in situation at hand, the *Prewitt* and *Baker* statements were not made to a private investigator hired by a private corporation to investigate wrongdoing pertaining to a civil suit.

The government seems to gloss over the important difference between statements made in a civil context to private investigators that later are sought to be used in a criminal trial and statements made in the context of a potential or actual criminal investigation that later are sought to be introduced in a criminal trial.

Statements to government investigators in the context of a criminal investigation are admissible under Rule 410(4) (which addresses plea-related discussions) unless made to an attorney for the government. *See, e.g., United States v. Hare*, 49 F.3d 447, 450 (8th Cir.1995). The Rule 410 exclusion, which addresses plea-related discussions that occurred with respect to a prior criminal matter, is narrower than the exclusion under Rule 408, which addresses statements, offers, and discussions that occurred in relation to a prior civil matter. That is, plea-related discussions are excludible only under Rule 410(4) if made directly a government attorney, whereas statements made during settlement discussions are excludible regardless of to whom they are made. In determining exclusion under Rule 408, attention must be directed to the context in which the statements are made, not the context in which the

statements are sought to be admitted. If the statements are made, as here, in relation to a pending or anticipated civil matter and later sought to be introduced in a civil or criminal trial, they are excludible.

Not only does the plain language of Rule 408 and case law from this circuit support this holding, but also the structure of Rule 408 and the framework of the Federal Rules of Evidence support such a ruling. As defendants point out, the plain language of Rule 408 provides for certain situations when statements made during compromise negotiations are admissible. For example, Rule 408 does not require exclusion when the evidence is offered for another purpose, such as to prove bias or prejudice, negative a contention of undue delay, or prove an effort to obstruct justice. I agree with defendants that if Rule 408 did not apply in criminal cases, there would be no need to carve out an exception for certain circumstances in criminal cases.

As importantly, the drafters of the Federal Rules of Evidence were aware of the scope and breadth of the rules and that these rules would be applied in criminal cases. Not only does Rule 1101(b) explicitly contemplate that the rules will apply to criminal proceedings, but also, in certain situations, the drafters of the rules affirmatively limited admissibility under a rule to civil and not criminal cases. Thus, Rule 803(8)(b) provides that public records are not to be excluded as hearsay when setting forth matters observed pursuant to a duty imposed by law, except "in criminal cases [involving] matters observed by police officers and other law enforcement personnel."

When the drafters wanted to exclude certain settlement statements from the scope of Rule 408, they did so. Likewise, when the drafters wanted to remove application of the rules from a criminal context, they did so. Failure to limit the scope of Rule 408 to civil litigation lends support to my determination that Rule 408 makes the defendants' statements inadmissible unless offered for "another purpose" under the rule.

For the foregoing reasons, it is

**ORDERED THAT** defendants' motion to exclude statements purportedly made by de-

fendants to LOF and the Fairfax Group (Doc. 517) shall be, and same hereby is, granted.

**So ordered.**