2004 ME 48

**UNION RIVER ASSOCIATES**

v.

**Howard BUDMAN.**

Supreme Judicial Court of Maine.

Argued: March 11, 2004.

Decided: April 8, 2004.

---

David Van Baars (orally), Brunswick, for the plaintiff.

Samuel W. Lanham (orally), Cuddy & Lanham, Bangor, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and LEVY, JJ.

LEVY, J.

[¶ 1] Howard Budman appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) affirming a forcible entry and detainer judgment of the District Court (Ellsworth, *Staples, J.*). Budman contends that the District Court erred when it (1) concluded that it lacked jurisdiction to consider Budman's affirmative defense related to his claim of a civil rights violation on the basis of religion, and (2) excluded evidence under the authority of M.R. Evid. 408(a) regarding Budman's affirmative defense that the parties reached an accord and satisfaction. Because we conclude that the court erred in excluding evidence of an accord and satisfaction, we vacate the judgment in part and remand for further proceedings solely on that issue.

## I. BACKGROUND

[¶ 2] Howard Budman is a tenant at Riverview Apartments in Ellsworth, which are owned by Union River Associates. A manager employed by Liberty Management, Inc., under contract with Union River Associates, manages the apartments.

[¶ 3] In December 2002, the manager of the apartments served Budman with a notice to quit for failure to pay rent. The notice informed Budman that he could avoid the termination of his tenancy by paying the full amount of rent due within seven days. The notice stated that Budman owed past due rent in the total amount of $284 for all or a portion of the rent due for April, July, September, and November.

[¶ 4] Union River subsequently filed its complaint for forcible entry and detainer. Budman, acting pro se, filed a written answer to the complaint in which he admitted his failure to pay rent, but explained that he had deposited the funds necessary to pay the past due rent in an account and was withholding his payment in response to Union River's violation of his civil rights. The answer asserted that the apartment's manager refused to take action after Budman, who is Jewish, complained to the manager that someone had taken down his Hanukkah decorations and that two swastikas were carved into the hood of his car. The answer asserted that the apartments' management was responsible for an "ongoing lack of action that has created an escalating anti-Semitic atmosphere."

[¶ 5] At the hearing, Budman testified that he suspected that the eviction proceeding may have been brought in retaliation for his earlier complaint to the manager of the apartments:

> I was in the midst of a battle with them over religious freedom and civil rights when the notice to [quit] came. I found that the timing was very suspicious. It was a week after I was told that the management company would not do anything to protect my civil rights, and I was corresponding with them about all

of the things that I was going to do to correct this matter. ... So when I got this notice[,] we were in the midst of what I felt was a really serious matter of denying my civil rights ....

Budman also testified that he had reported the incidents to the police and that the police wanted the manager to include in the apartment complex's newsletter a notice that anyone with information regarding the incidents should contact the police. He explained that when he received the notice to quit, "out of anger [I] decided to use this money as leverage over them [to cause the apartments' management to] take down the Christmas decorations, since my Hanukkah decorations had been taken down, and my car had been vandalized with two swastikas." Budman testified that he withheld his past due rent because management "refused to cooperate [and he felt] threatened and violated" by its failure to publish the notice in the newsletter and take down the Christmas decorations.[1]

[¶ 6] Budman also claimed that prior to the hearing Union River agreed to dismiss the complaint if he paid his rent arrearages and that he then paid the arrearages to Union River, but that Union River had failed to dismiss the complaint. He sought to introduce the testimony of his former attorney concerning the attorney's negotiation of a settlement with Union River's attorney. Union River objected to Budman's former attorney's testimony on the ground that its admission would violate M.R. Evid. 408(a) governing the admission of evidence of offers of compromise. The court sustained the objection and excluded the testimony, ruling that the evidence of settlement negotiations was inadmissible pursuant to Rule 408(a).

[¶ 7] At the conclusion of the evidence, the court found that Budman violated the terms of the lease agreement by his failure to pay rent and entered judgment for Union River. With respect to Budman's testimony regarding the violation of his civil rights, the court stated that it would not address the issue because "[t]his is not the venue in which those issues can be addressed properly" and that the court "has no jurisdiction to address, basically, what your defense is and that is the violation of your civil rights." Budman appealed to the Superior Court pursuant to M.R. Civ. P. 80D(f)(1). The Superior Court affirmed the judgment and remanded the case to the District Court for it to order the rent held in escrow to be assigned to Union River. Budman appeals from the Superior Court's judgment.

## II. DISCUSSION

### A. Affirmative Defense

[¶ 8] Budman contends that the District Court erred as a matter of law by concluding that it lacked jurisdiction to consider his defense of a civil rights violation on the basis of religion, relying on *Housing Authority of Bangor v. Maheux*, 2000 ME 60, 748 A.2d 474, for the proposition that a court should consider affirmative defenses raised in a forcible entry and detainer proceeding. Union River contends that Budman's reliance on *Maheux* is misplaced because the civil rights violation alleged by Budman had nothing to do with the violation of the lease that led to the termination of his tenancy. We review the District Court's legal conclusions de

---

1. Budman made other assertions in his appellate brief concerning discriminatory treatment at the Riverview Apartments that were not supported by record citations, *see* M.R.App. P. 9(a)(4), and that were not the subject of testimony by any of the four trial witnesses.

novo. *E.g., Blanchard v. Sawyer,* 2001 ME 18, ¶ 5, 769 A.2d 841, 843.[2]

[¶ 9] In *Maheux,* a landlord obtained a judgment of forcible entry and detainer against the tenant because "the conduct of [the tenant's] son seriously disrupted the right of other tenants to the quiet enjoyment of their homes in violation of the lease." *Maheux,* 2000 ME 60, ¶ 2, 748 A.2d at 475. Maheux's son had oppositional defiant disorder and she raised as an affirmative defense that the landlord had a duty to make reasonable accommodations for her son due to his condition pursuant to Federal Fair Housing Act, 42 U.S.C. §§ 3601–3631 (1994 & Supp. V 1999). In affirming the judgment for reasons unrelated to the affirmative defense, we addressed the procedure that a trial court should employ when a tenant raises a reasonable accommodation defense:

> If the tenant raises a reasonable accommodation defense, as with any other defense, the court should consider both the landlord's claim and the tenant's defense and either grant or deny the forcible entry and detainer. If the court determines that the landlord has a duty to offer a reasonable accommodation and has failed to do so, then the court should deny the forcible entry and detainer and not grant possession to the landlord. If, however, the court determines that the landlord is otherwise entitled to possession and either has no duty to offer a reasonable accommodation or has, in fact, offered a reasonable accommodation, then the court should grant the forcible entry and detainer.

*Maheux,* 2000 ME 60, ¶ 6, 748 A.2d at 476–77. The reasonable accommodation defense considered in *Maheux* bore directly on the question of whether the tenant breached the lease agreement as alleged by the landlord. The tenant's claim that the landlord failed to furnish a reasonable accommodation required by federal housing law was directly related to the acts that the landlord cited as constituting the tenant's breach of the lease agreement.

■ [¶ 10] Union River asserts that unlike the reasonable accommodation defense in *Maheux,* Budman's assertion that Union River initiated the forcible entry and detainer action in retaliation for his earlier complaint regarding religious discrimination had nothing to do with the basis for Budman's eviction, i.e., his failure to pay rent. Union River's argument fails to account, however, for the defense of retaliatory eviction established in Maine's Forcible Entry and Detainer statute, 14 M.R.S.A. §§ 6001–6017 (2003 & Supp. 2003).

[¶ 11] Subsection (B) of section 6001(3) provides that there is a rebuttable presumption of retaliation against a tenant if in the six months prior to the commencement of the forcible entry and detainer action, the tenant:

> Complained as an individual, or a complaint has been made in that individual's behalf, in good faith, of conditions affecting that individual's dwelling unit which may constitute a violation of a building, housing, sanitary or other code, ordinance, regulation or statute, presently or hereafter adopted, to a body charged with enforcement of that code, ordinance, regulation or statute, or such a body has filed a notice or complaint of such a violation.

14 M.R.S.A. § 6001(3)(B) (2003). The statute further provides that "[n]o writ of possession may issue in the absence of

---

2. When the Superior Court acts as an intermediate appellate tribunal, the Law Court reviews the initial determination of the District Court directly. *Rubin v. Josephson,* 478 A.2d 665, 667 n. 2 (Me.1984).

rebuttal of the presumption of retaliation." *Id.* § 6001(3).

[¶ 12] Union River contends that "conditions affecting that individual's dwelling unit," as employed in section 6001(3)(B), should be restricted to conditions associated with the physical state of the dwelling unit. The statute does not contain such a limitation, however, and experience teaches that nonphysical conditions can have as great an influence on the quality of life in one's dwelling as do physical conditions. Accordingly, nonphysical conditions—for example, repeated acts of vandalism committed against a tenant—should be analyzed as possible "conditions affecting that individual's dwelling unit" when it is claimed that the acts are a violation of the federal Fair Housing Act or the Maine Human Rights Act, both of which prohibit an owner from discriminating against a person because of religion. 42 U.S.C. § 3604(b) (2000) (making it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin"); 5 M.R.S.A. § 4582 (2002).[3]

[¶ 13] Here, the court erred by failing to consider Budman's claim of religious discrimination to determine whether the presumption of retaliation had been established and, if so, whether Union River rebutted the presumption. This failure was, however, harmless because the trial evidence failed to establish a violation of either the Fair Housing Act or the Maine Human Rights Act by Union River or its agents. Although Budman's answer asserted that Union River was responsible for an "ongoing lack of action that has created an escalating anti-Semitic atmosphere," the only evidence presented in this regard was the apartment manager's refusal to accede to Budman's request regarding the publication of a notice and the manager's refusal to take down Christmas decorations. There was no evidence offered as to why the manager refused these requests, nor was there evidence offered to establish that the manager's refusal contributed to an escalating anti-Semitic atmosphere at the Riverview Apartments as claimed by Budman, apart from the anti-Semitic atmosphere created by the two earlier acts of vandalism.

[¶ 14] Budman also failed to prove that he voiced his complaint of discrimination "to a body charged with enforcement" of the applicable statutes. 14 M.R.S.A. § 6001(3)(B). Neither the apartments' manager nor a municipal police officer are representatives or members of a body charged with enforcement of the federal Fair Housing Act or the Maine Human Rights Act. Therefore, although the District Court, in the exercise of its jurisdiction over actions for forcible entry and detainer, should have considered Budman's evidence of discrimination in conjunction with the rebuttable presumption established in section 6001(3)(B), the court's failure to consider the evidence was harmless because Budman failed to establish the elements required to give rise to the presumption.

[¶ 15] Budman also contends that in addition to section 6001(3)(B)'s rebuttable presumption, proof of a landlord's violation of the anti-discrimination provisions of the

---

**3.** Section 4582 of the Maine Human Rights Act contains a prohibition that is similar to section 3604(b) of the Fair Housing Act, but also expresses that it is unlawful "to evict or attempt to evict any tenant of any housing accommodation because of the race or color, sex, physical or mental disability, religion, ancestry, national origin or familial status of the tenant." 5 M.R.S.A. § 4582 (2002).

Fair Housing Act or the Maine Human Rights Act constitutes an independent affirmative defense in an action for forcible entry and detainer, citing *Fayyumi v. City of Hickory Hills*, 18 F.Supp.2d 909 (N.D.Ill.1998). In *Fayyumi*, the plaintiffs, individuals of Arab descent, claimed that their former landlord lulled them into not paying rent and then employed a forcible entry and detainer action to evict them because of their national origin. *Id.* at 910–11. The court determined that the plaintiffs could have asserted the landlord's violation of the Fair Housing Act as an affirmative defense in the earlier forcible entry and detainer action brought against them by the landlord in state court. *Id.* at 917–18 & n. 5. The court indicated that a finding of a violation of the Fair Housing Act would have authorized the court in the underlying forcible entry and detainer action to enjoin the landlord's attempt to evict the tenants. *Id.* at 912.

[¶ 16] We have not previously addressed whether a landlord's violation of the anti-discrimination provisions of the Fair Housing Act or the Maine Human Rights Act may be raised as a defense in a forcible entry and detainer action that, if proved, would justify the denial of a writ of possession. Because we have already concluded that Budman failed to establish a violation of either law by Union River, we do not use this occasion to address the issue.

### B. Proof of an Accord and Satisfaction

[¶ 17] Budman challenges the court's exclusion of the proffered testimony of his former attorney concerning settlement discussions with Union River's attorney. The court excluded the testimony based on M.R. Evid. 408(a) regarding evidence of compromise or offers to compromise. We review the exclusion of evidence pursuant to Rule 408 for clear error and abuse of discretion. *Me. Shipyard & Ma-*

*rine Ry. v. Lilley*, 2000 ME 9, ¶ 20, 743 A.2d 1264, 1269.

[¶ 18] M.R. Evid. 408(a) provides that evidence associated with the compromise of a claim "is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim," nor is "[e]vidence of conduct or statements made in compromise negotiations including mediation ... admissible on any substantive issue in dispute between the parties." This rule of exclusion pertains to proof of *liability*, or the *validity* or *amount* of a claim, but does not exclude evidence offered for other purposes. *See* Field & Murray, *Maine Evidence* § 408.2 at 169 (2000 ed.) (stating that the rule "has no application when used for another purpose").

[¶ 19] The existence of an accord and satisfaction is a question of fact that must be established by a preponderance of the evidence. *E.S. Herrick Co. v. Me. Wild Blueberry Co.*, 670 A.2d 944, 946 (Me.1996). "An accord is a contract under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty." *Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶ 4, 722 A.2d 1278, 1280 (citations and quotations omitted). "Settlement of a disputed claim is sufficient consideration for an accord and satisfaction." *Id.*

[¶ 20] Budman offered evidence of the parties' settlement negotiations not to establish liability, the validity, or amount of the claim or on some other substantive issue in dispute between the parties. Rather, Budman sought to establish the existence of an accord and satisfaction. Had Budman proved the existence of a contract of accord and satisfaction, Union River, having agreed to dismiss the complaint, would have been estopped from proceeding. Therefore, the evidence was relevant to Budman's defense. Because M.R. Evid. 408(a) does not operate to ex-

clude relevant evidence of an accord and satisfaction, the court erred by excluding the testimony of the attorney as to his negotiation with Union River's attorney. This portion of the judgment must be vacated and the matter remanded for the court to receive evidence and determine whether this action was resolved by an accord and satisfaction.

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the District Court for further proceedings solely on the defense of an accord and satisfaction in accordance with this opinion.