2010 ME 27

**STATE of Maine**

v.

**Deane TRACY.**

Supreme Judicial Court of Maine.

Argued: Feb. 10, 2010.

Decided: March 25, 2010.

Sherry Tash, Esq. (orally), Hainke & Tash, Whitefield, ME, for Deane Tracy.

Janet T. Mills, Attorney General, Leanne Robbin, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1]   Deane Tracy appeals from a judgment of conviction of forgery (Class D), 17–A M.R.S. § 703(1)(A) (2009),[1] entered in the Superior Court (Kennebec County, *Jabar, J.*) after a nonjury trial.  The State alleged that Tracy presented a falsified bill of sale to the District Court (Skowhegan, *Mullen, J.*) in defending against a small claims action brought by Melissa and Ken Curtis to recover $2,500 owed on a car that the Curtises sold to Tracy and his wife Sarah Tracy.  We affirm the judgment of conviction.

## I.  BACKGROUND

[¶ 2]   Tracy challenges (1) the court's denial of his motion to sever his trial from his wife's forgery trial, (2) the court's admission of evidence of communications and conduct that occurred during a small claims mediation, (3) the court's exclusion

---

1.  Title 17–A M.R.S. § 703(1)(A) (2009) provides: "A person is guilty of forgery if, with the intent to defraud or deceive another person or government ... [t]he person falsely makes, completes, endorses or alters a written instrument, or knowingly utters or possesses such an instrument.  Violation of this paragraph is a Class D crime."

of statements made by Tracy's wife based on the marital privilege, and (4) the sufficiency of the evidence to establish his guilt beyond a reasonable doubt. We are not persuaded by Tracy's arguments, and we focus our legal discussion on the admissibility of mediation-related evidence.

[¶ 3] Viewing the evidence in the light most favorable to the court's judgment, the court rationally could have found the following facts beyond a reasonable doubt. *See State v. Ahmed,* 2006 ME 133, ¶ 21, 909 A.2d 1011, 1019. In 2006, Deane Tracy, who was then a police officer in Skowhegan, and his wife, Sarah Tracy, agreed to purchase a 1992 Mercedes Benz from Melissa and Ken Curtis for $3,500. Tracy's wife prepared a bill of sale and took it to Melissa Curtis to sign. Melissa Curtis made three copies before signing it; she signed one copy and gave it to Tracy's wife, took one home, and filed one at work. She also kept the original. The bill of sale that Tracy's wife delivered to Melissa Curtis appeared as follows:

Bill of Sale

We sold a 1992 m benz 300E,
VIN. # WDBED30E7NB794822 to:
Deane and Sarah Tracy for $3500.00 cash.
*The vehicle is sold as is/were is.*

Date Sold: 05/09/2006

Seller(s):

Buyer(s):
[Tracy's signature]

_____

[Tracy's wife's signature]

[¶ 4] Because the Tracys had paid only $1,000 by early 2007, the Curtises brought a small claims action seeking the remaining $2,500 owed. The Tracys and the Curtises attended a small claims mediation in March 2007. The Tracys were not represented by counsel. At that mediation, Tracy's wife stated that she had paid an additional $500 to the Curtises. The Curtises offered to settle for $2,000, rather than the

$2,500 they had alleged, if the Tracys could document the $500 payment. The Tracys did not provide documentation, however, and the case did not settle.

[¶ 5] Trial on the small claims complaint was held several weeks later. Because Tracy's wife had not been properly served, the trial went forward against Tracy alone, and his wife did not attend the small claims trial. The Curtises offered in evidence the bill of sale for the car. Tracy testified that he was unaware of the payment arrangements. He testified that his wife had said that she "would take care of it." Tracy offered in evidence a bill of sale that, in contrast to the bill of sale offered by the Curtises, contained a statement that the vehicle had been paid for in full:

Bill of Sale

We sold a 1992 m benz 300E,
VIN. # WDBED30E7NB794822 to:
Deane and Sarah Tracy for $3500.00 cash: _Paid in full._
*The vehicle is sold as is/were is.*

Date Sold: 05/09/2006

Seller(s):
[Melissa Curtis's signature]

Buyer(s):
[Tracy's signature]

_____

[Tracy's wife's signature]

The portion that reads, "Paid in full," is slightly higher on the line than the preceding language, though in the same font; the punctuation of that portion of the bill appears to have been partly handwritten in; and Tracy's and his wife's signatures are not identical on the two different bills of sale. Although Melissa Curtis admitted that the seller's signature on the bill of sale that Tracy offered looked like her signature, she was surprised by the document when she saw it during the small claims trial, and she testified that it was fraudulent.

[¶ 6] Five months after the small claims trial,[2] the State charged both Tracy

2. The court did not admit evidence concerning the judgment entered on the small claims

action because it concluded that the evidence

and his wife with forgery (Class D), 17–A M.R.S. § 703(1)(A), related to the altered bill of sale, and the matters were joined for trial. Tracy pleaded not guilty and moved to sever his case from his wife's on the ground that her communications with the Curtises, although admissible in the case against her, would be inadmissible hearsay in his case, and their admission would result in prejudice to him. After hearing arguments from the parties, the court denied the motion.

[¶ 7] Tracy moved in limine for the court to permit him to offer evidence for which his wife might assert the marital privilege, and the State moved in limine for the admission of testimony about the small claims mediation session. The court heard arguments and considered in limine the testimony of the mediator who served

in the small claims proceeding. Tracy argued that evidence from mediation was inadmissible both because Rule 408(a) of the Maine Rules of Evidence precluded the admission of evidence from mediation,[3] and because any statements he made were not voluntary and were therefore obtained in violation of the Due Process Clause and the Fifth Amendment right against self-incrimination.

[¶ 8] During the criminal trial of Tracy and his wife, the court admitted evidence concerning the small claims mediation over Tracy's objection. The court sustained the objection of Tracy's wife to the admission of Tracy's testimony at the small claims hearing that she had said she was taking care of payment for the car, concluding that those communications were subject to the marital privilege.

---

was irrelevant and unfairly prejudicial. *See* M.R. Evid. 402, 403.

**3.** At the time, M.R. Evid. 408 provided:

**RULE 408. COMPROMISE AND OFFERS TO COMPROMISE**

(a) Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations or in mediation is also not admissible on any substantive issue in dispute between the parties.

(b) Evidence of conduct or statements by any party or mediator at a court-sponsored domestic relations mediation session is not admissible for any purpose.

By adopting 2010 Me. Rules 01, effective Jan. 1, 2010, we amended Rule 408 to provide:

**RULE 408. COMPROMISE AND OFFERS TO COMPROMISE**

(a) **Settlement Discussions.** Evidence of furnishing or offering or promising to furnish, or accepting or offering or promising

to accept, a valuable consideration in compromise or attempting to compromise a claim is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations or in mediation is also not admissible on any substantive issue in dispute between the parties or to impeach a witness through a prior inconsistent statement or contradiction.

(b) **Mediation.** Evidence of conduct or statements by any party or mediator at a mediation session undertaken to comply with any statute, court rule, or administrative agency rule or in which the parties have been referred to mediation by a court, administrative agency, or arbitrator or in which the parties and mediator have agreed in writing or electronically to mediate with an expectation of confidentiality, is not admissible for any purpose other than to prove fraud, duress, or other cause to invalidate the mediation result in the proceeding with respect to which the mediation was held or in any other proceeding between the parties to the mediation that involves the subject matter of the mediation.

M.R. Evid. 408 (effective Jan. 1, 2010). We also adopted a new Rule of Evidence to create a limited privilege for mediators. *See* M.R. Evid. 514 (effective Jan. 1, 2010).

[¶ 9] After the State presented its evidence, the court denied Tracy's motion for a judgment of acquittal. Tracy offered the testimony of three witnesses regarding his character for honesty, after which he testified. Among other things, Tracy testified, without objection from his wife, that the car sale "was negotiated between the women" and that his wife told him, and he believed, that she had paid for the car in full.

[¶ 10] After considering the trial evidence, the court found both Tracy and his wife guilty of forgery. First, the court found beyond a reasonable doubt that Tracy's wife had falsely made and produced the bill of sale that stated, "Paid in full," and that she had intended to deceive the District Court.

[¶ 11] The court then found that Tracy had knowingly presented that false document at the small claims hearing with the intent to deceive the District Court. The court found that Tracy's testimony was incredible, and actually incriminating in a way that he … knew that … this paid in full document was not the original bill of sale, and that it was a false document, and that he possessed it and passed it to the Court in an attempt to get out from under this cause of action which was against him.

[¶ 12] Specifically, the court found it illogical that Tracy would attend mediation, knowing that he had a bill of sale marked, "Paid in full," without showing that bill of sale to the Curtises. The court also did not believe that Tracy thought his wife had paid for the car in full because, for months after signing the bill of sale, she and the Curtises had continued to discuss the matter of payment.

[¶ 13] The court sentenced Tracy to nine months in jail, all suspended, and one year of administrative release with the requirement that he perform 120 hours of community service work.[4] Tracy timely appealed from the judgment of conviction.

## II.  DISCUSSION

A.  Admissibility of Statements and Conduct at Mediation Pursuant to the Maine Rules of Evidence [5]

■ [¶ 14] Tracy argues that the court should not have admitted any evidence

---

4.  The court also imposed a $1,000 fine, and surcharges and assessments totaling $210.

5.  Tracy also argues that the mediation evidence should have been excluded at trial because his Fifth Amendment right against self-incrimination and his due process rights were violated due to the mediator's failure to tell him that information from mediation might be admissible in proceedings other than the small claims matter. Tracy's Fifth Amendment right against self-incrimination was not implicated, however, by admission of the mediation-related evidence in this case because the evidence was either nontestimonial or was not testimony from Tracy. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County,* 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (holding that the privilege against self-incrimination applies only to testimonial evidence from the defendant that relates a factual assertion or discloses information that incriminates him or her). Furthermore, Tracy cites no precedent for extending the protections of the Fifth Amendment in this context. Although appearance at a mediation may be mandatory, statements and testimony are not. *Cf. Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (holding that the Fifth Amendment does not prohibit adverse inferences against a party in a civil proceeding who claims the privilege against self-incrimination); *see also* M.R. Evid. 513 (permitting comment and an adverse inference when a party asserts the privilege against self-incrimination in a civil proceeding). We have never required a mediator in a court-ordered mediation to advise the parties of the Fifth Amendment privilege against self-incrimination, and we do not adopt such a requirement today.

related to the small claims mediation in his criminal forgery trial. We take this opportunity to clarify three concepts arising in the Maine Rules of Evidence that sometimes generate confusion regarding the use of mediation-related evidence at trial: (1) confidentiality, *see, e.g.,* M.R. Evid. 502(a)(5) (defining the nature of confidential communications between a lawyer and a client);[6] (2) privilege, *see* M.R. Evid. 501 (stating that privileges are created by constitution, statutes, or court rules), 502–514 (establishing privileges by rule); and (3) admissibility, *see* M.R. Evid. 402 (stating that relevant evidence is admissible except as otherwise provided by court rules or by law).

[¶ 15] We address these concepts as they relate to the three pieces of evidence from mediation that Tracy contends should have been excluded: (1) the representation made by Tracy's wife that she had paid $500 more than the Curtises alleged, (2) the Curtises' offer to settle for $2,000 if Tracy's wife could document that payment, and (3) Tracy's failure to notify the Curtises that he had a bill of sale stating, "Paid in full."

### 1. Confidentiality and Privilege

■ [¶ 16] As set forth in the Rules of Evidence, a confidential communication is one made in the context of a special relationship with the intent that it not be disclosed to *any* third parties except in strictly limited circumstances. *See, e.g.,* M.R. Evid. 502(a)(5) (lawyer-client commu-

nications), 503(a)(5) (health professional-patient communications), 505(a)(2) (communications to clergy); *see also* M.R. Evid. 408(b) (effective Jan. 1, 2010) (providing for mediation confidentiality by agreement in writing or electronically). When a statement is cloaked in confidentiality, it is intended that the statement may only be disclosed to an outside party—including the court—to further the purpose of the communication or for other limited purposes related to the service being provided *See* M.R. Evid. 502(a)(5) (confidential communication to an attorney), 503(a)(5) (confidential communication to a health professional), 504(a) (confidential communication to a spouse), 505(a)(2) (confidential communication to a member of the clergy).

[¶ 17] To protect these types of confidential communications from being disclosed at trial, specific privileges have been established in the Maine Rules of Evidence. *See* M.R. Evid. 502(b), (d) (attorney-client), 503(b), (e) (health professional-patient), 504(b), (d) (husband-wife), 505(b) (religious).[7] These privileges serve to facilitate candor in important relationships that rely on the sharing of sensitive, confidential information. *See* M.R. Evid. 502–505. Other privileges established in the Maine Rules of Evidence serve to protect important public interests by preventing the disclosure at trial of state secrets, trade secrets, votes cast by secret ballot, and informants' identities. *See* M.R. Evid. 506–509.

---

**6.** Several statutes also provide a basis for information to be designated as confidential. *See, e.g.,* 5 M.R.S. § 791 (2009) (providing for confidentiality of certain tax records, business records, and correspondence used by state agencies to certify minority business enterprises, women's business enterprises, and disadvantaged business enterprises); 8 M.R.S. § 1006 (2009) (designating as confidential for purposes of Maine's Freedom of Access Act, 1 M.R.S. § 402(3) (2009), certain information

submitted to the Gambling Control Board when applying for a license). Tracy does not assert any statutory confidentiality.

**7.** These privileges are subject to limited exceptions set forth in the Maine Rules of Evidence. *See* M.R. Evid. 502(d) (attorney-client), 503(e) (health professional-patient), 504(d) (husband-wife).

[¶ 18] At the time of Tracy's trial, the Maine Rules of Evidence did not provide that statements made during mediation were confidential communications or that they were subject to any privilege.[8] Nor did any constitutional[9] or statutory privilege apply. *See* M.R. Evid. 501 (providing that privileges may only be established by constitution, statute, or court rule). Accordingly, the parties' statements and conduct during the small claims mediation were not confidential communications protected by any privilege. *See Guy Gannett Publ'g Co. v. Univ. of Me.*, 555 A.2d 470, 472 (Me.1989) (holding that Rule 408 did not make evidence privileged). These communications could be disclosed and used as evidence in the criminal trial unless they were inadmissible pursuant to the Rules of Evidence for some other reason.[10]

## 2. Admissibility

■ [¶ 19] Whether or not a communication is confidential and protected by a privilege, the evidence may be inadmissible pursuant to the Maine Rules of Evidence. The Rules restrict the admissibility of evidence "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." M.R. Evid. 102. By making certain evidence inadmissible, the Rules of Evidence address concerns about fairness in the administration of justice, the efficiency of trials, and the truth-seeking function of the courts. For instance, the Rules restrict the admissibility of evidence for purposes of addressing the risk of unfair prejudice as weighed against the probative value of evidence, M.R. Evid. 403; ensuring the competency of testifying witnesses, M.R. Evid. 601; ensuring the authenticity of evidence, M.R. Evid. 901; and, relevant to the case before us, encouraging compromise and settlement of claims, M.R. Evid. 408.

[¶ 20] Relying on M.R. Evid. 408(a), Tracy contends that evidence from mediation was inadmissible at the criminal trial on the charges of forgery. We review the court's admission of evidence arising from the mediation session pursuant to Rule

---

**8.** Although the Maine Rules of Evidence do not, and historically have not, made statements made during mediation confidential, the Rules recently were amended to include a limited privilege that can be claimed by mediators. *See* M.R. Evid. 514 (effective Jan. 1, 2010); *see also* M.R. Evid. 408, Advisory Committee's Note to 1993 amend. (noting that no mediator's privilege existed in Rule 408 at that time). The Advisory Committee Note to the January 1, 2010, amendment to Rule 408(b) states, in pertinent part:

> The rule is designed to encourage parties to speak openly and freely in mediation by assuring them that their statements will not be usable against them in the case being mediated or in any other case between the same parties with the same subject mater. On the other hand, revised Rule 408(b) does not render statements in mediation inadmissible in proceedings involving third parties, such as criminal proceedings, or even in proceedings between the mediating parties that do not involve the subject matter of the mediation. Nor does it insulate statements in mediation from civil discovery.

**9.** As explained in footnote five above, the constitutional privilege against self-incrimination, U.S. Const. amend. V, was not implicated in this matter.

**10.** The current version of Rule 408(b) limits the admissibility of evidence if "the parties and mediator have agreed in writing or electronically to mediate with an expectation of confidentiality." At the time of the trial of this matter, this version of the Rule was not in effect. Even if it had been, however, there is no evidence of a written agreement to mediate with an expectation of confidentiality signed by the mediator and the parties to the small claims matter.

408(a) to determine whether the court erred or abused its discretion. *See Union River Assocs. v. Budman*, 2004 ME 48, ¶ 17, 850 A.2d 334, 340; *Greenstreet v. Brown*, 623 A.2d 1270, 1272 (Me.1993).

[¶ 21] The version of Rule 408(a) in effect at the time of the trial restricted the admissibility of conduct or statements made during compromise negotiations or mediation as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations or in mediation is also not admissible on *any substantive issue in dispute between the parties.*

M.R. Evid. 408(a) (emphasis added) (amended Jan. 1, 2010). To encourage settlement discussions, the Rule made evidence inadmissible, regardless of the parties' intentions of secrecy or desire for confidentiality, if the evidence was offered to address the merits of the claim or any substantive issue in dispute between the parties. *See* M.R. Evid. 408, Advisers' Note. In this way, the Rule encouraged litigants to speak freely in mediation without the concern that statements made while pursuing settlement through mediation would be used at a trial on the merits if the mediation failed. The classic example of the application of this Rule is expressed as follows: if a litigant in a civil negligence proceeding conceded during mediation, "I may have been speeding, but you ran a red light," that statement would not be admissible in the trial on the negligence claim.

[¶ 22] Tracy sought to apply this principle not to exclude evidence from the small claims trial—the dispute between the parties—but instead to exclude evidence from a subsequent criminal trial on a charge of forgery. Pursuant to Rule 408(a), as it existed before the most recent amendment, evidence of negotiation between litigants was admissible if offered for any purpose other than to address "liability for, invalidity of, or amount of the claim or any other claim," or "any substantive issue in dispute between the parties." M.R. Evid. 408(a) (amended Jan. 1, 2010). *See Union River Assocs.*, 2004 ME 48, ¶¶ 18–20, 850 A.2d at 340–41; *Me. Shipyard & Marine Ry. v. Lilley*, 2000 ME 9, ¶ 22, 743 A.2d 1264, 1270; *LeClair v. Commercial Union Ins. Co.*, 679 A.2d 90, 92–93 (Me.1996); *Guy Gannett Publ'g Co.*, 555 A.2d at 472–73; *Harriman v. Maddocks*, 518 A.2d 1027, 1031 (Me.1986).

[¶ 23] In applying that Rule, we vacated the exclusion of evidence of settlement negotiations in a forcible entry and detainer action because the evidence was offered to establish the existence of an accord and satisfaction between the parties—an issue unrelated to the substantive issue of liability—and it was therefore admissible. *Union River Assocs.*, 2004 ME 48, ¶¶ 1, 18–20, 850 A.2d at 336, 340–41. We also upheld the admission of statements made during negotiations to settle an automobile accident claim when they were offered to prove fraud rather than to address the substantive issues of liability or damages for the accident. *Harriman*, 518 A.2d at 1031.

[¶ 24] When not offered in a dispute "between the parties," but instead in the separate litigation of a different dispute between an outside party and a participant in the settlement discussion, we have consistently upheld the admission of evidence from negotiations. *See Me. Shipyard &*

*Marine Ry.*, 2000 ME 9, ¶ 22, 743 A.2d at 1270; *LeClair*, 679 A.2d at 92–93; *Guy Gannett Publ'g Co.*, 555 A.2d at 472–73. In such circumstances, the evidence was admissible pursuant to Rule 408 because it was offered neither to establish liability on the negotiated claim nor to establish an issue in dispute between the parties to the negotiation. *See* M.R. Evid. 408(a) (amended Jan. 1, 2010); *Me. Shipyard & Marine Ry.*, 2000 ME 9, ¶ 22, 743 A.2d at 1270; *LeClair*, 679 A.2d at 92–93; *Guy Gannett Publ'g Co.*, 555 A.2d at 472–73.

[¶ 25] This is our first occasion to consider whether Rule 408(a), as it existed before the January 2010 amendment, precluded the admission of evidence from mediation in a subsequent *criminal* case. We conclude, consistent with our holdings in civil cases, that the Rule permitted the admission of such evidence in a criminal proceeding as long as the evidence was not offered for a purpose prohibited by the Rule. *Cf. United States v. Skeddle*, 176 F.R.D. 254, 257 (N.D.Ohio 1997) (holding that, although Fed.R.Evid. 408 applies in criminal cases, it does not require the exclusion of evidence offered for a purpose other than that identified in the Rule).

[¶ 26] Rule 408, as it existed at the time of Tracy's trial and as currently written, serves to encourage a mediated resolution of the issues that the parties are litigating. Although the parties are free to posture and bargain during civil mediation, they may not use that mediation as a shield behind which to act in furtherance of a crime.

[¶ 27] Here, the State did not offer evidence from mediation to establish liability on the small claims action or any other claim; nor did it offer the evidence in a dispute between the parties to mediation. *See* M.R. Evid. 408(a) (amended Jan. 1, 2010). Rather, the State offered the evidence in a criminal trial to establish the Tracys' commission of the crime of forgery, and the evidence was admissible for that purpose. *See Harriman*, 518 A.2d at 1031. Neither the language of the Rule nor its underlying purposes demand the exclusion of the mediation evidence in the criminal forgery trial. Accordingly, Rule 408(a) did not require the exclusion of the evidence from the mediation between the Curtises and the Tracys, and we discern no error or abuse of discretion in the court's admission of the evidence.[11]

B. Remaining Arguments

[¶ 28] Contrary to Tracy's other contentions, the court did not err or abuse its discretion in denying his motion to sever his trial from that of his wife, *see State v. Lakin*, 2006 ME 64, ¶ 7, 899 A.2d 777, 779; *see also Bruton v. United States*, 391 U.S. 123, 124, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968);[12] U.S. Const. amends. V, VI;

---

11. The result likely would have been the same if analyzed pursuant to the current Rules. Although the mediator may have asserted a privilege against testifying pursuant to M.R. Evid. 514, the claimed privilege would have to have been examined pursuant to the crime-fraud and the manifest injustice exceptions, M.R. Evid. 514(c)(2), (7), to the mediator privilege. Further, the evidence from mediation would have been admissible under the new rules as long as the evidence was offered through the mediation participants rather than the mediator himself. *See* M.R. Evid. 408 (as amended Jan. 1, 2010); M.R. Evid.

514. Accordingly, the State would have been able to present testimony from the Curtises to demonstrate that Tracy's wife represented at mediation that she had paid $500 more than the Curtises acknowledged; that the Curtises offered to resolve the matter for $2,000 if the Tracys could show proof of the additional $500 payment; and that Tracy did not show the "paid in full" document to the Curtises at mediation.

12. Tracy did not stand to suffer prejudice in the way described in *Bruton v. United States*, 391 U.S. 123, 124, 137, 88 S.Ct. 1620, 20

any error in excluding evidence based on his wife's assertion of the marital privilege was harmless, M.R.Crim. P. 52(a); *State v. Rega,* 2005 ME 5, ¶ 19, 863 A.2d 917, 923; and, viewing the evidence in the light most favorable to the State, the court could rationally have found each element of the offense beyond a reasonable doubt, *see Ahmed,* 2006 ME 133, ¶ 21, 909 A.2d at 1019; 17–A M.R.S. § 703(1)(A).

L.Ed.2d 476 (1968). In her out-of-court statements, his wife did not confess to forgery and name him as an accomplice, accuse him of a

The entry is:

Judgment affirmed.

crime, or describe his culpability in any way. *Cf. id.*